TURI ROSTAD *v.* LEON HIRSCH
(AC 31904)

Gruendel, Robinson and Peters, Js.

Argued February 7—officially released April 19, 2011

*Hugh F. Keefe*, with whom, on the brief, was *Benjamin D. Gettinger*, for the appellant (defendant).

*Proloy K. Das* and *Debra C. Ruel*, with whom, on the brief, was *James M. Ruel*, for the appellee (plaintiff).

*Opinion*

PETERS, J. In this contested paternity action, after genetic testing established that the defendant was the father of the plaintiff's child, the trial court awarded pendente lite attorney's fees to each member of the mother's litigation team. The father's appeal contests the amount of the fees awarded to the mother's attorneys. We must decide whether we have jurisdiction to hear this interlocutory appeal and whether the record supports the court's fee awards. We decide both of these questions in the father's favor. Accordingly, we reverse the court's rulings as to two of the mother's attorneys and remand the case for recalculation of the contested fees.

On June 12, 2008, the plaintiff, Turi Rostad, filed an amended complaint alleging that the defendant, Leon Hirsch, was the father of her minor son, then fifteen years of age, and seeking an order of support and maintenance for the boy. The same day, the plaintiff filed a motion for genetic testing. The defendant denied his

paternity and pleaded special defenses of laches, equitable estoppel, waiver and unclean hands.

After several months of pretrial litigation, including the defendant's extensive discovery requests and his unsuccessful interlocutory appeal to this court, he submitted to genetic testing that established his paternity. Thereafter, the trial court granted the plaintiff's motions for child support and for pendente lite attorney's fees in the amount of $145,489.03 for Rome McGuigan, P.C. (Rome McGuigan), $25,000 for attorney Andrew Devlin and $10,000 for attorney Thomas Asch. The defendant's appeal challenges only the attorney's fees award.

The defendant's appeal presents two issues. He maintains that (1) this court has jurisdiction to decide the propriety of the trial court's pendente lite award of attorney's fees and (2) the trial court's award of attorney's fees was excessive in part. We agree.

I

APPELLATE JURISDICTION

Before we can address the merits of the substantive dispute between the parties, we must determine whether we have subject matter jurisdiction to hear the defendant's appeal. See, e.g., *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). In a prior ruling on the plaintiff's motion for review, we already have affirmed the trial court's ruling that the defendant's appeal automatically stayed the plaintiff's fee award. See Practice Book § 61-11 (a).[1] We now must decide whether the court's pendente lite fee award was

---

[1] We decline the plaintiff's request to revisit our ruling. We note, however, that the plaintiff is incorrect in her claim that, textually, Practice Book § 61-11 (a) does not govern interlocutory *orders* as distinguished from interlocutory *judgments*. In 2002, Practice Book § 61-11 (a) was amended to provide that "proceedings to enforce or carry out the judgment *or order* shall be automatically stayed . . . ." (Emphasis added.)

a final judgment that is presently reviewable on appeal. We conclude that it is.

In this state, unless a statute provides otherwise, the appealability of an interlocutory ruling is governed by *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983). See generally W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2011 Ed.) § 61-1; C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 3.1 et seq. Pursuant to *Curcio*, "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 31.

The parties to the appeal in this case principally disagree about the applicability of the second prong of *Curcio* to the trial court's award of pendente lite litigation fees.[2] In *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 901 A.2d 1164 (2006), our Supreme Court recently restated the test that governs our inquiry. "[U]nder the second prong of the *Curcio* test, the party seeking to appeal must establish that the trial court's order threatens the preservation of a right already secured and that the right will be irretrievably lost and the party irreparably harmed unless an immediate appeal is permitted. . . . An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate. . . . Moreover, even when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under

---

[2] We recognize that the defendant also claims that an award of pendente lite attorney's fees qualifies for immediate appellate review under the first prong of *Curcio*. Under the circumstances of this case, we need not address that claim.

the second prong of *Curcio*." (Citations omitted; internal quotation marks omitted.) Id., 231.

Although the parties agree that these principles govern this appeal, they disagree about whether a pendente lite award of attorney's fees meets the requirements for immediate appealability. Our Supreme Court case law has addressed this issue only obliquely. Without referencing *Curcio*, the court held, in *Paranteau* v. *DeVita*, 208 Conn. 515, 523, 544 A.2d 634 (1988), that, for the purpose of appealability, a trial court judgment on the *merits* is a final judgment, notwithstanding the pendency of a postjudgment claim *for attorney's fees*. See General Statutes § 52-263. The court thereafter relied on *Paranteau* to permit an immediate appeal from a judgment of strict foreclosure in which attorney's fees remained to be determined. *Benvenuto* v. *Mahajan*, 245 Conn. 495, 501, 715 A.2d 743 (1998). Neither case, however, addressed the appealability of an award of attorney's fees *prior* to the final resolution of the underlying litigation.

To supplement this history, the defendant notes that the Supreme Court twice has reviewed the merits of interlocutory attorney's fees awards. See *Hotchkiss* v. *Hotchkiss*, 143 Conn. 443, 446, 123 A.2d 174 (1956); *England* v. *England*, 138 Conn. 410, 415–17, 85 A.2d 483 (1951). The defendant properly concedes that these precedents are distinguishable because they did not address the issue of appealability.

We must look for guidance, therefore, to appeals *not* dealing with attorney's fees, in which our Supreme Court has found a sufficient risk of *irreparable* harm to authorize the immediate appealability of an interlocutory trial court order under the second prong of *Curcio*. These cases include *Putman* v. *Kennedy*, 279 Conn. 162, 167–68 n.9, 900 A.2d 1256 (2006) (domestic violence restraining order); *Sweeney* v. *Sweeney*, 271 Conn. 193,

196, 208, 856 A.2d 997 (2004) (enrollment of minor child in parochial school); *Taff* v. *Bettcher*, 243 Conn. 380, 386–87, 703 A.2d 759 (1997) (temporary custody order); *Goodson* v. *State*, 228 Conn. 106, 113–14, 635 A.2d 285 (1993) (order of reinstatement to employment pending arbitration); *Madigan* v. *Madigan*, 224 Conn. 749, 757, 620 A.2d 1276 (1993) (temporary custody order in dissolution action); *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 548, 295 A.2d 519 (1972) (pendente lite child support order in dissolution action); *Hiss* v. *Hiss*, 135 Conn. 333, 336, 64 A.2d 173 (1949) (pendente lite child support order in support action). In addition, in dictum, our Supreme Court has stated that "a ruling by a trial court regarding financial issues in a marital dissolution case—whether it be a pendente lite ruling, a ruling issued in conjunction with a final dissolution judgment or a decision regarding a postjudgment motion—is a final judgment for purposes of appeal." *Ahneman* v. *Ahneman*, 243 Conn. 471, 479, 706 A.2d 960 (1998).

This court recently reviewed these precedents to consider the appealability of an interlocutory trial court order in a marital dissolution case. Contrary to the usual rule, that order permitted the defendant, during the pendency of the proceedings, to expend funds in his own name. *Parrotta* v. *Parrotta*, 119 Conn. App. 472, 476, 988 A.2d 383 (2010). We hypothesized that "the jurisprudence finding finality in pendente lite orders rests on the notion that the orders under scrutiny have concluded a party's rights with respect to the issue at hand because the court is not able, at the time of the final judgment, to provide any remedial relief in regard to the pendente lite orders." Id., 478. In *Parrotta*, we held that that was not the case. The trial court expressly had stated, as part of its order, that the funds so expended "would be taken into account" at the time the court made a final division of the marital assets. Id., 481. On that record, because the trial court's order

did not *irreversibly* require the contested payments to be made, we concluded that the order was not a final judgment and dismissed the plaintiff's appeal. Id., 483.[3]

As in *Parrotta,* as a matter of jurisprudence, we are persuaded that, to decide whether an interlocutory ruling has caused an appellant to suffer irreparable harm, it is relevant to inquire whether the trial court, at the time of the final judgment, will be able to provide remedial relief. Many of the cases permitting an immediate interlocutory appeal, by their very nature, preclude such a second look. In the present case, the record does not disclose that either party has pursued such an inquiry. Indeed, on its face, the court's order appears unequivocal.

On the record before us, we hold that the *possibility* of future remedial trial court orders is not determinative of whether the plaintiff's pendente lite attorney's fees award is presently an appealable judgment. A contrary ruling would violate the well established principle that the arguments presented by the litigants ordinarily govern the scope of appellate review. *Baldwin* v. *Curtis,* 105 Conn. App. 844, 849–50 n.2, 939 A.2d 1249 (2008). Furthermore, it would be inconsistent with the well established judicial presumption in *favor* of appellate jurisdiction. See, e.g., *In re Matthew F.,* 297 Conn. 673, 689, 4 A.3d 248 (2010); *Simms* v. *Warden,* 230 Conn. 608, 614, 646 A.2d 126 (1994). Accordingly, we agree with the defendant that we have jurisdiction to hear his appeal.

## II

## THE MERITS OF THE ATTORNEY'S FEES AWARD

The plaintiff asked the trial court for an award of attorney's fees, pendente lite, of $205,971.10 to Devlin,

---

[3] In *Perricone* v. *Perricone,* 271 Conn. 919, 920, 859 A.2d 569 (2004), our Supreme Court granted the plaintiff's petition for certification to appeal the following issue: " 'Did the Appellate Court properly dismiss the plaintiff's appeal from the trial court's award of pendente lite attorney's fees?' " The appeal, however, was later withdrawn.

$81,225 to Asch and $178,354.73 to Rome McGuigan. The plaintiff also sought payment of an additional $100,000 representing future attorney's fees for the continued prosecution of this action. Characterizing the present litigation as "a simple paternity case," the defendant objected that the amount of the fees requested was unreasonable. In addition, he maintained that the fee award should exclude expenses incurred, in part, in defense of a separate action filed in New Haven.[4]

The court agreed with some of the defendant's objections. It excluded the attorney's fees in the New Haven case because that case was not a paternity action. It declined to make an award for undocumented expert fees.

The court did not agree, however, with the defendant's contention that this was "a simple paternity case." Although it became clear as the litigation proceeded that the defendant has been aware of the existence of his son for almost all of the boy's life, he "adopted a defense strategy which required the plaintiff to fight every point. This include[d] refusal to undergo DNA testing prior to a probable cause hearing, an appeal from the court's order to undergo DNA testing, the raising of questionable special defenses, and the refusal to take a serious position on the issue of pendente lite support." In light of this record, the court properly rejected the defendant's argument that "the result was inevitable and could have been achieved by the plaintiff, pro se."

Although we concur in the court's characterization of *this* paternity action as one that "needed excellent,

---

[4] The New Haven case was brought by Lynch, Traub; Keefe & Errante, P.C., as trustee for an unidentified principal to recover payments made to the plaintiff and her son pursuant to an agreement entered into after the son's birth. In that case, the trial court granted a motion to strike on the ground that the agreement provided that all disputes should be arbitrated. The defendant's brief in his appeal to this court acknowledges that he is the unidentified principal to whom the agreement refers.

time-consuming representation in order to deal with defenses employed by the defendant," we nonetheless must examine the specific issues that the defendant has raised about the work product of the attorneys who represented the plaintiff. Our review of a court's award of attorney's fees in a paternity action pursuant to General Statutes § 46b-171[5] is limited to an inquiry into whether the court's ruling was an abuse of its discretion. *Pagliaro* v. *Jones*, 75 Conn. App. 625, 635–36, 817 A.2d 756 (2003).

The defendant's appeal focuses on the court's own finding that the plaintiff sought an award of attorney's fees for work performed by three separate law firms "when one local firm would have sufficed." Both the court and the defendant distinguish between the bills submitted by the law firm of Rome McGuigan and by attorneys Devlin and Asch.

With respect to Rome McGuigan, the court found that "[t]he bills submitted by Rome McGuigan are at hourly rates which are appropriate for the experience of the attorneys. . . . Rome McGuigan's bills are fully itemized, detailed and reasonable." The defendant's appeal has not challenged any part of this finding.[6]

The court characterized "[t]he bills submitted by . . . Devlin and . . . Asch as problematic. . . . Devlin,

---

[5] General Statutes § 46b-171 (a) (1) provides in relevant part: "(A) If the defendant is found to be the father of the child, the court or family support magistrate shall order the defendant to stand charged with the support and maintenance of such child . . . .

"(B) The court or family support magistrate shall order the defendant to pay such sum to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be, and shall grant execution for the same and costs of suit taxed as in other civil actions, together with a reasonable attorney's fee . . . ."

[6] Although the defendant challenges the award in its entirety, he has not provided this court with any basis for concluding that the fees awarded to Rome McGuigan are unreasonable. His argument focuses instead on the fees awarded to Devlin and Asch.

who is the plaintiff's cousin, has never handled a paternity case before. He knew that he was not licensed in Connecticut and would need local counsel. Once he lined up Rome McGuigan to represent the plaintiff, it was not reasonable for him to continue to be involved in any significant way. . . . Asch is even harder to understand. He was engaged by his friend . . . Devlin, but it is not clear why. Like . . . Devlin, he has never handled a paternity case and is not licensed in Connecticut." The court nonetheless made an award of $25,000 in fees to Devlin and an award of $10,000 in fees to Asch.

The defendant challenges the propriety of these awards on two grounds. He maintains that neither attorney had relevant experience to contribute to the plaintiff's cause of action and that both of them overbilled for the services that they did render. He cites Devlin's testimony that he charged the plaintiff for reviewing the plaintiff's complaint, even though that complaint mirrored the form authorized by the rules of practice and had already been reviewed and analyzed by Rome McGuigan. He maintains that it was improper for Devlin and Asch to bill the plaintiff for the expense of travel to and attendance at court hearings in which they did not actively participate.

In response, the plaintiff relies on the presumption that a trial court's award of fees is reasonable and argues that the defendant's contentions are unreviewable without a further articulation of the court's reasoning. We disagree.

By its own reasoning, the court justifiably could award attorney's fees only in a nominal amount, if at all, to attorneys not licensed in this state who, at best, reinforced the highly professional services performed by highly competent in-state attorneys. In light of the facts found by the court, its awards to Devlin and Asch were an abuse of its discretion.

The order of the trial court requiring the defendant to pay legal fees of $145,489.03 to Rome McGuigan, P.C. is affirmed. The order of the trial court awarding legal fees of $25,000 to attorney Devlin is reversed. The order of the trial court awarding legal fees of $10,000 to attorney Asch is reversed.

The judgment is reversed only as to the amount of attorney's fees awarded to attorneys Andrew Devlin and Thomas Asch, and the case is remanded for a redetermination of what fees, if any, they are entitled to recover. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.