******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TURI ROSTAD *v.* LEON HIRSCH
(AC 34656)

Beach, Alvord and Bear, Js.

*Argued October 30, 2013—officially released March 4, 2014*

(Appeal from Superior Court, judicial district of
Litchfield, Pickard, J.)

*Benjamin D. Gettinger*, with whom, on the brief, was *Hugh F. Keefe*, for the appellant-cross appellee (defendant).

*Debra C. Ruel*, with whom was *James M. Ruel*, for the appellee-cross appellant (plaintiff).

*Opinion*

BEAR, J. The plaintiff, Turi Rostad, and the defendant, Leon Hirsch, both appeal from the judgment of the trial court regarding the plaintiff's requests for attorney's fees, statutory interest, past due child support, and past due "special child support." In his appeal, the defendant claims that the trial court erred in awarding (1) past due child support to the plaintiff for the period from May 1, 2008 to June 1, 2009; (2) interest under General Statutes § 37-3a on the January 19, 2010 pendente lite award of attorney's fees to the plaintiff; and (3) additional attorney's fees to the plaintiff's counsel, Rome McGuigan, P.C. (Rome McGuigan). In her cross appeal, the plaintiff claims in turn that the trial court erred in not awarding (1) past due child support to her for the period from May 15, 2005 to April 30, 2008; (2) past due "special child support" under the child support and arrearage guidelines, § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies; and (3) more than $200 in attorney's fees to attorneys Andrew Devlin and Thomas Asch. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the present appeals. This matter previously was before this court in *Rostad* v. *Hirsch*, 128 Conn. App. 119, 120–21, 15 A.3d 1176 (2011), which we cite for the following relevant facts: "On June 12, 2008, the plaintiff . . . filed an amended complaint alleging that the defendant . . . was the father of her minor son, then fifteen years of age, and seeking an order of support and maintenance for the boy. The same day, the plaintiff filed a motion for genetic testing. The defendant denied his paternity and pleaded special defenses of laches, equitable estoppel, waiver and unclean hands.

"After several months of pretrial litigation, including the defendant's extensive discovery requests and his unsuccessful interlocutory appeal to this court, he submitted to genetic testing that established his paternity. Thereafter, the trial court granted the plaintiff's motions for child support and for pendente lite attorney's fees in the amount of $145,489.03 for Rome McGuigan . . . $25,000 for attorney Andrew Devlin and $10,000 for attorney Thomas Asch. The defendant's appeal challenge[d] only the attorney's fees award."

This court reversed the judgment of the trial court as to the award with respect to the amounts specified for Devlin and Asch: "By its own reasoning, the court justifiably could award attorney's fees only in a nominal amount, if at all, to attorneys not licensed in this state who, at best, reinforced the highly professional services performed by highly competent in-state attorneys. In light of the facts found by the court, its awards to Devlin and Asch were an abuse of discretion." Id., 128. This

court affirmed the award in all other respects. We will refer to this previous appeal and the procedural history pertaining to the plaintiff's motion for pendente lite attorney's fees as *Rostad I*.

Shortly thereafter, on June 21, 2011, the plaintiff filed a pendente lite motion for a scheduling order, in which she sought "an order from the court scheduling a trial in this matter for the final adjudication of the claims for relief set forth in [her] amended verified petition, dated June 1[2], 2008." These claims included, inter alia, her "claim for support, pursuant to [General Statutes] § 46b-215 (a) (7),[1] for the period of May 15, 2005 through May 31, 2009"; her "claim for reasonable attorney's fees, pursuant to [General Statutes] § 46b-171 (a) (1) (B), to include the remand by the Appellate Court with regard to certain orders set forth in [the trial court]'s . . . memorandum of decision, dated January 10, 2010"; and her "claim for an order of interest, pursuant to . . . § 37-3a, as damages with regard to those attorney's fees withheld from [the plaintiff] by [the defendant] during the pendency of the appeal . . . and which were affirmed by the Appellate Court." (Footnotes omitted.) We will refer to this present appeal and the procedural history pertaining to the plaintiff's June 21, 2011 motion as *Rostad II*.

Oral argument on the motion was held on December 1, 2011, and April 17, 2012. In addition to the claims raised in the motion, the plaintiff also sought the adjudication of a claim that she raised during oral argument, rather than in the motion, pertaining to expenses that she and her son had incurred in defending themselves against a breach of contract action filed in the Superior Court for the judicial district of New Haven by the defendant's counsel, Lynch, Traub, Keefe & Errante, P.C., as trustee for a then unidentified principal later revealed to be the defendant. *Rostad I*, supra, 128 Conn. App. 126 n.4. The defendant's counsel alleged in the breach of contract action that the present paternity action constituted a breach of an agreement that the defendant entered into with the plaintiff after her son's birth, and it sought to recover payments that the plaintiff and her son had received pursuant to the agreement. The court in the breach of contract action ultimately granted the plaintiff's motion to strike the complaint on the ground that the agreement contained an arbitration clause that governed all related disputes. The plaintiff then sought attorney's fees for the breach of contract action in the present paternity action, as part of the award of attorney's fees at issue in *Rostad I*, supra, 120. The time frame for the request was the time frame of the breach of contract action, June, 2008 to October, 2008. The trial court denied that request, as noted by this court in *Rostad I*. Id., 126.

At oral argument before the trial court in *Rostad II*, the plaintiff acknowledged that she had not challenged

the court's denial of that request. She then requested that the court instead award past due "special child support" under the child support guidelines, in the amount that she and her son had incurred as expenses in defending themselves in the New Haven action.

The court rendered its judgment on May 3, 2012. It granted the plaintiff's requests for (1) past due child support for the period from May 1, 2008 to June 1, 2009, in the amount of $81,055; (2) 10 percent interest under § 37-3a on the pendente lite award of attorney's fees to the plaintiff, in the amount of $23,310; and (3) additional attorney's fees for work performed by the plaintiff's counsel since September, 2009, in the amount of $127,552.58. The court denied, however, the plaintiff's requests for (1) past due child support for the period from May 15, 2005 to April 30, 2008, and (2) past due "special child support."[2] With respect to this court's remand regarding the award of attorney's fees to Devlin and Asch, the trial court held that they each were entitled to nominal attorney's fees of $100 only. This appeal followed. The defendant filed his appeal on May 21, 2012, while the plaintiff filed her cross appeal on May 31, 2012. Additional facts and procedural history will be set forth as necessary.

I

The defendant claims that the court erred in granting the plaintiff's request for interest under § 37-3a on the pendente lite award of attorney's fees because § 37-3a requires a "wrongful withholding" of money after it becomes payable, and he had no legal duty to pay the award while his good faith appeal was pending. We are not persuaded.

Section 37-3a provides in relevant part: "(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

"The decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 61, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

The court reasoned in awarding interest under § 37-3a to the plaintiff: "This is primarily an equitable determination. The court must find that the detention of money was 'wrongful.' 'Wrongful' simply means that the detention was without the legal right to do so. Interest may be awarded even if the liable party had a good faith basis for retention. The primary purpose of § 37-3a is not to punish persons who have detained money owed to others in bad faith, but, rather, to compensate parties [who] have been deprived of the use of their money. . . . In this case, the court will exercise its discretion to award interest at 10 percent per annum on the awards of [attorney's fees] from when they were due until they [were] paid. Although the appeal taken by the defendant of the awards to Rome McGuigan was not taken in bad faith, the delay caused by the appeal benefited the defendant and wrongfully deprived the plaintiff of the funds." (Citation omitted.)

Our resolution of the defendant's claim is governed by *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 74 A.3d 1212 (2013),[3] which previously had been before our Supreme Court in *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 998 A.2d 730 (2010). Upon remand to the trial court, the plaintiff filed a motion for postjudgment interest under General Statutes § 37-3b. The trial court denied the motion and held that "the wrongful detention standard of § 37-3a also applies to an award of postjudgment interest under § 37-3b. . . . [I]n the context of [§ 37-3a], wrongful is not synonymous with bad faith conduct. Rather, wrongful means simply that the act is performed without the legal right to do so. . . . The trial court therefore concluded that, because the judgment had been stayed by operation of Practice Book § 61-11, the defendants had a legal right to withhold payment of the judgment while their appeal was pending, and, consequently, their failure to pay the judgment during the pendency of the appeal reasonably could not be characterized as wrongful." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 45–46.

Our Supreme Court reversed in part the judgment of the trial court: "We . . . conclude that, although the trial court properly determined that the same standard applies to both provisions, the standard that the court actually did apply was incorrect." Id., 43–44. It elaborated: "[I]n the context of § 37-3a, a wrongful detention of money, that is, a detention of money without the legal right to do so, is established merely by a favorable judgment on the underlying legal claim, so that the court has discretion to award interest on that judgment, without any additional showing of wrongfulness, upon a finding that such an award is fair and equitable. Consequently, contrary to the determination of the trial court, the fact that a defendant has a legal right to withhold

payment under the judgment during the pendency of an appeal is irrelevant to the question of whether the plaintiff is entitled to interest under § 37-3a." Id., 48–49.

Our Supreme Court further provided: "[U]nder § 37-3a, proof of wrongfulness is not required above and beyond proof of the underlying legal claim. . . . In other words, the wrongful detention standard of § 37-3a is satisfied by proof of the underlying legal claim, a requirement that is met once the plaintiff obtains a judgment in his favor on that claim. Because, in the present case, the trial court concluded that [the plaintiff] was required to prove, in addition to the underlying claim, that the defendants' detention of her money was wrongful—a standard that, in the trial court's view, could be met only upon proof that the defendants were actually obligated to pay the judgment during the pendency of their appeal—the legal standard that the court applied was incorrect." (Citation omitted; internal quotation marks omitted.) Id., 52.

Our Supreme Court stated with respect to the applicable standard of review: "[A]n award of interest under § 37-3a . . . is discretionary with the trial court. Interest is awarded . . . when the court determines that such an award is appropriate to compensate the plaintiff for the loss of the use of his or her money. . . .

"[Section] 37a-3 . . . does not identify the factors to be considered by the trial court in exercising its discretion under the statute. Accordingly, the court is free to consider whatever facts may be relevant to its determination. Judicial discretion, however, is always a legal discretion, exercised according to the recognized principles of equity. . . . Such discretion . . . imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice. . . .

"Inherent [therefore] in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . A court's discretion must be informed by the policies that the relevant statute is intended to advance. . . . As we have indicated, regardless of whether a statute provides for mandatory or discretionary postjudgment interest, the policy behind any such provision is to compensate the successful party for the loss of the use of the money that he or she is awarded from the time of the award until the award is paid in full." (Citations omitted; internal quotation marks omitted.) Id., 54–55.

The court in the present matter noted this policy in exercising its discretion to award 10 percent interest per annum on its pendente lite award of attorney's fees to the plaintiff. Given the court's invocation of the well established policy underlying § 37-3a, as well as the undisputed fact of the award in favor of the plaintiff,

the affirmance of the award in large part by this court, and the defendant's delay in paying the award,[4] we conclude that the court correctly applied the law and reasonably could have reached the conclusion that it did with respect to its award of interest under § 37-3a.

## II

Both parties claim that the court erred with respect to its judgment on the plaintiff's requests for attorney's fees. Specifically, the defendant claims that the court abused its discretion by awarding additional attorney's fees to the plaintiff's counsel because the amount of the award was disproportionate in relation to both applicable precedent and the amount and nature of the underlying work done by the plaintiff's counsel. The plaintiff claims in turn that the court abused its discretion by awarding only $200 to Devlin and Asch as attorney's fees because the record demonstrates that Devlin and Asch performed a significant amount of work from April 1, 2008, to May 12, 2008, before the plaintiff's counsel became involved in the present matter. We are not persuaded by either claim.

"It is well established that we review the trial court's decision to award attorney's fees for abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . [T]his state follows the general rule [known as the American rule] that, except as provided by statute or in certain defined exceptional circumstances, the prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." (Internal quotation marks omitted.) *Kupersmith* v. *Kupersmith*, 146 Conn. App. 79, 96, 78 A.3d 860 (2013).

"An award of attorney's fees is not a matter of right. Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the best position to evaluate the particular circumstances of a case. . . . A court has few duties of a more delicate nature than that of fixing counsel fees. The issue grows even more delicate on appeal; we may not alter an award of attorney's fees unless the trial court has clearly abused its discretion, for the trial court is in the best position to evaluate the circumstances of each case. . . . Because the trial court is in the best position to evaluate the circumstances of each case, we will not substitute our opinion concerning counsel fees or alter an award of attorney's fees unless the trial court has clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 63–64, 762 A.2d 508 (2000).

"General Statutes § 46b-171[5] provides that a successful plaintiff in a paternity action is entitled to an award of reasonable attorney's fees, but the trial court has

broad discretion in determining the amount of attorney's fees that will be allowed under the statute." *Donato* v. *Corrado*, 22 Conn. App. 583, 585–86, 578 A.2d 161 (1990). "[Section] 46b-171 does not require a court to consider specific statutory factors in fashioning awards, but merely requires that exercise of the court's broad discretion be reasonable." *Pagliaro* v. *Jones*, 75 Conn. App. 625, 635–36, 817 A.2d 756 (2003).

A

We first address the defendant's claim regarding the plaintiff's request for post-August, 2009 attorney's fees. In granting the request, the court determined: "These fees include defense of the appeal taken to the Appellate Court. . . . The rates charged are fair and the expenditures of time are reasonable. The defendant has argued that the previous fees to Rome McGuigan are higher than any fees ever awarded in Connecticut in a paternity case. Perhaps this is true. But, it does not help the court to determine if the fees are justified. The fees, although high, were necessitated by the aggressive defense interposed by the defendant." The defendant claims that the court abused its discretion because the amount of the award is unreasonable, insofar as (1) it is unprecedented, and (2) the majority of the work that the plaintiff's counsel has done since September, 2009, has involved the appeal, which this court decided in April, 2011, and the matter of attorney's fees, not child support. We disagree.

The defendant's claim links the award's reasonableness under § 46b-171 (a) (1) (B) primarily to the award's quantitative component, rather than to the abuse of discretion criteria of "whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Kupersmith* v. *Kupersmith*, supra, 146 Conn. App. 96. Adopting the defendant's argument would be akin to substituting the defendant's judgment regarding the reasonableness of the award for the court's judgment, and we decline to do so. The court based its calculation of the award on detailed invoices and trial testimony provided by the plaintiff's counsel. Given its reliance on this information, its familiarity with the complex procedural history of this matter, and the broad latitude afforded to it by § 46b-171 (a) (1) (B), we conclude that the court did not abuse its discretion in granting the plaintiff's request for additional attorney's fees in the amount of $127,552.58.

B

We next address the plaintiff's claim that the court abused its discretion in awarding only $200 in attorney's fees to Devlin and Asch because it "focused too heavily on the term 'nominal' [in this court's previous decision on this matter] and insufficiently upon its prior findings of fact." We are not persuaded.

The following procedural history is relevant to our resolution of this claim. This court concluded with respect to the first award of attorney's fees to Devlin and Asch: "By its own reasoning, the court justifiably could award attorney's fees only in a nominal amount, if at all, to attorneys not licensed in this state who, at best, reinforced the highly professional services performed by highly competent in-state attorneys. In light of the facts found by the court, its awards to Devlin and Asch were an abuse of its discretion. . . . The judgment is reversed only as to the amount of attorney's fees awarded to attorneys Andrew Devlin and Thomas Asch, and the case is remanded for a redetermination of what fees, if any, they are entitled to recover." *Rostad* v. *Hirsch*, supra, 128 Conn. App. 128–29. Upon remand, the court "reviewed the previous findings concerning these fees together with the guidance of the Appellate Court and . . . determined that Devlin and Asch are entitled to no more than nominal fees in the amount of $100 each."

The plaintiff filed a motion for articulation on November 21, 2012, in which she requested "an articulation as to the factual and legal basis for the court's determination that reasonable attorney's fees for Andrew Devlin and Thomas Asch were limited to one hundred dollars . . . each." The court provided in its January 30, 2013 corrected articulation: "The basis for the court's award to attorneys Devlin and Asch is found in the language of the Appellate Court's decision in the remand of this case. . . . Based on the language . . . I believed that, in order for my redetermination to be 'justifiable,' it would have to be 'only in a nominal amount, if at all.' Because I had previously found that attorneys Devlin and Asch had, in fact, done some work which contributed to the plaintiff's case, I awarded nominal damages of $100 to each." (Citations omitted.) The plaintiff then filed a motion for review on February 19, 2013. In an order dated March 28, 2013, this court granted the motion but denied the request for relief therein.

It is well recognized "that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory [on] the parties to the action and [on] the trial court. . . . The rule is that a determination once made will be treated as correct throughout all subsequent stages of the proceeding except when that question comes before a higher court . . . ." (Emphasis omitted; internal quotation marks omitted.) *American Diamond Exchange, Inc.* v. *Alpert*, 302 Conn. 494, 509, 28 A.3d 976 (2011). This court's conclusion that the trial court's reasoning warranted at most a nominal award of attorney's fees to Devlin and Asch was the law of the case on remand, and accordingly, the trial court's focus on this court's use of the word "nominal" was correct, not an abuse

of discretion. "Nominal is defined by Webster, Third New International Dictionary as being so small, slight, or negligible as scarcely to be entitled to the name: trifling, insignificant." (Internal quotation marks omitted.) *Granite Equipment Leasing Corp.* v. *Acme Pump Co.*, 165 Conn. 364, 368, 335 A.2d 294 (1973).

### III

The plaintiff claims that the court erred in denying her request for past due "special child support" consisting of attorney's fees that she and her son incurred in defending themselves in the New Haven action because the child support and arrearage guidelines, § 46b-215a-1 et seq. of the Regulations of Connecticut State Agencies, and *Maturo* v. *Maturo*, 296 Conn. 80, 995 A.2d 1 (2010), required the court to analyze her claim in accordance with the guidelines. The plaintiff also claims that the court erred in denying her claim on the ground that it could not separate the attorney's fees allocable to her and her son because *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 63 A.3d 896 (2013), states that such apportionment of intertwined claims is unnecessary for attorney's fees purposes. We are not persuaded.

The following procedural history is relevant to our resolution of this claim. As previously noted, the plaintiff first sought to recover attorney's fees for the breach of contract action through her pendente lite motion for attorney's fees, filed on April 13, 2009, and revised on October 16, 2009 to amend the statutory basis of the motion to § 46b-171 (a) (1) (B). The court denied the request and stated in its January 19, 2010 memorandum of decision: "The defendant argues that attorney's fees incurred in defense of the New Haven action should not be assessed to the defendant pursuant to § 46b-171. I agree. Although neither party can cite to binding precedent, it seems clear to me that § 46b-171 relates to attorney's fees incurred in the prosecution of a paternity case, not in defending related matters. The New Haven action is a related matter. . . . The court is mindful that Connecticut adheres to the American rule that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . Here, the statutory exception provided by § 46b-171 is limited to the prosecution of a paternity action." (Citation omitted; internal quotation marks omitted.) The plaintiff did not appeal from this or from any part of the court's January 19, 2010 judgment.

On December 1, 2011, the first day of trial, the plaintiff framed her past due "special child support" claim as follows: "[T]his actually is special child support under guidelines 46b-215a, dash 3, paren 6, parentheses capital 'C,' parentheses capital 'D.' And this is the cost to the mother of defending the child in this New Haven law-

suit." In a subsequent brief ordered by the court, the plaintiff elaborated: "The [plaintiff] asserts that, pursuant to . . . § 46b-171 (a) (1) (A)[6] and § 46b-215, the [defendant] should be ordered to pay the [plaintiff's] New Haven litigation expenses in the form of past due child support."

She further explained: "The court should make a finding on the record that such an increase in its award of past due child support is for the benefit of the minor child . . . in that the minor child's 'needs' during the time period in question . . . included the need for competent legal representation . . . . In addition the court should make a finding on the record that the following deviation criteria, as set forth within § 46b-215a-3 (b) of the Regulations of Connecticut State Agencies, justify such an increase in the award of past due child support: Subdivision (1) (A) ('substantial assets, including both income-producing and non-income producing property'); subdivision (1) (B) ('the parent's earning capacity'); subdivision (2) (A) ('education expenses'); subdivision (6) (C) ('[b]est interests of the child'); and subdivision (6) (D) ('[o]ther equitable factors')."[7]

The plaintiff framed her request for past due "special child support" as separate and distinct from her claim for past due child support for the same period: "[T]he court should order the [defendant] . . . to reimburse the [plaintiff] for the New Haven litigation expenses she incurred to defend the minor child and herself . . . . The court should issue such an order in addition to whatever child support award it would have otherwise issued had the New Haven action never been initiated . . . ."

In denying the plaintiff's request for past due "special child support," the court wrote: "I have decided not to award 'special child support' because I do see this as an attempt to circumvent my original decision not to award fees for the New Haven case. The plaintiff has not presented any controlling case law supporting her creative argument that the court would be justified in awarding child support for defense of an independent action. Second, even if the court were inclined to award as child support the attorney's fees incurred in defending the child in an independent action, there is no basis for the court to separate those fees from the fees incurred in defending the plaintiff."

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption

in favor of the correctness of its action." (Internal quotation marks omitted.) *McKeon* v. *Lennon*, 131 Conn. App. 585, 597, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011).

" 'Child support award' means the entire payment obligation of the noncustodial parent, as determined under the child support and arrearage guidelines, and includes current support payments, health care coverage, child care contribution, and periodic payment on arrearages." Regs., Conn. State Agencies § 46b-215a-1 (6). "[T]he purpose of a child support order is to provide for the care and well-being of minor children . . . ." *Battersby* v. *Battersby*, 218 Conn. 467, 473, 590 A.2d 427 (1991). The plaintiff argues that the attorney's fees incurred in relation to the breach of contract action qualify as child support because they were expenditures made for the benefit of her son. Yet, she does not separate the attorney's fees she incurred in defending her son as his parent and next friend[8] from those she incurred in defending herself, and the record is devoid of any evidence with which the court could have undertaken such a separation. The plaintiff seeks to recover the entirety of the attorney's fees charged for the New Haven action by her counsel, and she contends that she is entitled to do so under *Total Recycling Services of Connecticut, Inc.* v. *Connecticut Oil Recycling Services, LLC*, supra, 308 Conn. 333, in which our Supreme Court held: "[W]hen certain claims provide for a party's recovery of contractual attorney's fees but others do not, a party is nevertheless entitled to a full recovery of reasonable attorney's fees if an apportionment is impracticable because the claims arise from a common factual nucleus and are intertwined."

The court determined in its January 19, 2010 memorandum of decision that the plaintiff is not entitled to recover the amount at issue under our law regarding attorney's fees, and she has not challenged that conclusion on appeal. By citing to *Total Recycling Services of Connecticut, Inc.*, however, the plaintiff asks us to apply our law regarding attorney's fees so that she may seek to recover the entirety of the amount at issue under a wholly separate and distinct area of our law, that governing child support, even though part of the amount was incurred primarily for her benefit, not her son's benefit. We decline to apply *Total Recycling Services of Connecticut, Inc.*, in the matter advocated by the plaintiff. For the reasons set forth in this section, and in the absence of clear statutory, regulatory, or other governing precedent supporting the plaintiff's position, we decline to hold that the court abused its discretion in denying the plaintiff's request for past due "special child support."

The plaintiff has chosen to seek an award of attorney's fees on the basis of the concept of child support in this case, instead of establishing her and her son's

rights to attorney's fees in the New Haven action that she successfully defended. In the absence of an appropriate legal basis, her claim for such past due "special child support" must fail. See *Kupersmith* v. *Kupersmith*, supra, 146 Conn. App. 96; *Rostad* v. *Hirsch*, Superior Court, judicial district of Litchfield, Docket No. FA-08-4007181-S (January 19, 2010) (49 Conn. L. Rptr. 247, 248), rev'd in part on other grounds by *Rostad I*, supra, 128 Conn. App. 129. We thus reject the plaintiff's argument that the court abused its discretion in denying her request for past due "special child support" consisting of attorney's fees incurred during the New Haven action.

IV

Both parties claim that the court erred with respect to its judgment on the plaintiff's requests for other past due child support. Specifically, the defendant claims that the court abused its discretion by awarding past due child support to the plaintiff in the amount of $81,055 for the period from May 1, 2008 to June 1, 2009, because the court should have credited him for his previous voluntary payments to the plaintiff and her son. The plaintiff claims in turn that the court abused its discretion by denying her request for past due child support for the period from May 15, 2005 to April 30, 2008, because it did not come to its conclusion in accordance with the relevant case and statutory law. We are not persuaded by either claim.

Section 46b-215 (a) (7) provides in relevant part: "(A) The court or family support magistrate may also determine, order and enforce payment of any support due because of neglect or refusal to furnish support for periods prior to the action. In the case of a child born out of wedlock whose parents have not intermarried, a parent's liability for such support shall be limited to the three years next preceding the filing of a petition or written agreement to support pursuant to this section. (B) In the determination of support due based on neglect or refusal to furnish support prior to the action, the support due for periods of time prior to the action shall be based upon the obligor's ability to pay during such prior periods, as determined in accordance with the child support guidelines established pursuant to section 46b-215a. . . ."

The court determined with respect to the plaintiff's request for past due child support: "It is undisputed that the defendant agreed to contribute to the child's support from birth and that he faithfully performed the agreement reached by the parties until this action was brought. As a result of that agreement, the defendant paid in excess of $500,000 for the support of the child. The court is unable to find a neglect or refusal to pay support under these circumstances, at least until the defendant stopped paying support when this action was instituted. The defendant stopped paying any support

as of May 1, 2008, and he did not resume paying support until the temporary support order was issued, effective June 1, 2009. For this thirteen month period it is found that the defendant refused or neglected to pay support." In accordance with its May 27, 2009 child support order of $6235 per month, the court awarded $81,055 in past due child support for the thirteen month period of May 1, 2008 to June 1, 2009.

"We review the propriety of an order awarding child support retroactively under an abuse of discretion standard." *Dowling* v. *Szymczak*, 309 Conn. 390, 408, 72 A.3d 1 (2013). Again, "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Lefebvre* v. *Lefebvre*, 75 Conn. App. 662, 666, 817 A.2d 750, cert. denied, 263 Conn. 921, 822 A.2d 243 (2003).

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Danehy* v. *Danehy*, 118 Conn. App. 29, 32, 982 A.2d 273 (2009).

A

The defendant argues that the court abused its discretion because it did not credit him for $532,000 in voluntary child support payments that he previously had made to the plaintiff and her son when it awarded $81,055 in past due child support for the period from May 1, 2008 to June 1, 2009. The only authority to which the defendant cites is *Culver* v. *Culver*, 127 Conn. App. 236, 248, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011), for the general proposition that "our courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court." (Internal quotation marks omitted.) *Culver* undermines the defendant's position, however, because this court decided in *Culver* that the trial court properly exercised its discretion in declining to credit certain of the defendant's voluntary child support payments against the plaintiff's past due child support claim: "[W]e agree with the defendant that the court could have exercised its equitable discretion to relieve him of all or some portion of his support obligation, but it

was not an abuse of discretion for the court to have declined to do so." Id., 249.[9]

We likewise conclude that the court in the present matter did not abuse its discretion when it awarded past due child support for the period from May 1, 2008 to June 1, 2009, during which the defendant's nonpayment of any support is undisputed. We are not persuaded by the defendant's argument that he should have received credit for payments that he made before the period during which he paid no support, especially given (1) the court's consideration of these payments in its denial of the request for past due support for the period from May 15, 2005 to April 30, 2008, and (2) the lack of any relevant authority that supports this argument. Nor are we persuaded by the defendant's argument that the award is contrary to public policy because it effectively is a punishment for his act of noblesse oblige[10] in paying voluntary child support. There similarly is a lack of any relevant authority that supports this argument. Accordingly, we reject the defendant's claim.

B

The plaintiff argues that the court abused its discretion in denying her request for past due child support for the period from May 15, 2005 to April 30, 2008 because it "did not abide by the statutory directives set forth in General Statutes § 46b-215b (a) and required under [*Maturo* v. *Maturo*, supra, 296 Conn. 80]," i.e., that the court "consider the [child support guidelines] when . . . adjudicat[ing] the plaintiff's claim for past due child support for the three years preceding the initiation of the action." We are not persuaded.

Section 46b-215b (a) provides in relevant part: "The child support and arrearage guidelines issued pursuant to section 46b-215a, adopted as regulations pursuant to section 46b-215c, and in effect on the date of the support determination shall be considered in all determinations of child support award amounts, including . . . past-due support amounts . . . and payment on arrearages and past-due support within the state. In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under the deviation criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case."

In turn, *Maturo* v. *Maturo*, supra, 296 Conn. 94–96, provides in relevant part: "[T]he applicable statutes, as well as the guidelines, provide that all child support awards must be made in accordance with the principles

established therein to ensure that such awards promote equity, uniformity and consistency for children at all income levels. . . . General Statutes § 46b-84 specifically instructs that courts shall consider various characteristics and needs of the child in determining whether support is required, the amount of support to be awarded and the respective abilities of the parents to provide such support. Although the guidelines grant courts discretion to make awards on a case-by-case basis above the amount prescribed for a family at the upper limit of the schedule when the combined net weekly income of the parents exceeds that limit, which is presently $4000 . . . the guidelines also indicate that such awards should follow the principle expressly acknowledged in the preamble and reflected in the schedule that the child support obligation as a percentage of the combined net weekly income should decline as the income level rises. Thus, an award of child support based on a combined net weekly income of $8000 must be governed by the same principles that govern a child support award based on a combined net weekly income of $4000, even though the former does not fall within the guidelines' schedule. Finally, although courts may, in the exercise of their discretion, determine the correct percentage of the combined net weekly income assigned to child support in light of the circumstances in each particular case, including a consideration of other, additional obligations imposed on the noncustodial parent, any deviation from the schedule or the principles on which the guidelines are based must be accompanied by the court's explanation as to why the guidelines are inequitable or inappropriate and why the deviation is necessary to meet the needs of the child." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

The following procedural history is relevant to our resolution of this claim. In her November 21, 2012 motion for articulation, referenced in part II B of this opinion, the plaintiff stated: "The trial court did not articulate how it determined that the $30,000 per year that [the defendant] paid for the benefit of the minor child between May 15, 2005, and April 30, 2008, was the appropriate level of child support under . . . § 46b-215 and the analysis required pursuant to [*Maturo*]. [The plaintiff] seeks an articulation as to the factual and legal basis for the court's determination that by paying child support at the rate of $30,000 per year, the defendant . . . did not neglect or refuse to pay the level of child support required under a *Maturo* analysis and under . . . § 46b-215 for the time period May 15, 2005 to April 30, 2008."

The court stated in turn in its January 30, 2013 corrected articulation: "I have little to add to what is expressed in the memorandum of decision of May 3, 2012. I said that I agreed with the defendant's claim that he could not be liable for retroactive support for

the period from May 15, 2005 to April 30, 2008, because he never neglected or refused to pay support during this time period. During this period he was paying support to the plaintiff of $30,000 per year pursuant to an agreement with the plaintiff. This is a substantial amount of support which I did not believe could be characterized as neglect or refusal to pay support."

Ordinarily, the abuse of discretion standard applies to a court's financial orders in domestic relations matters, but because our resolution of this claim hinges on our construction of the statutory scheme underlying the plaintiff's claim, our review initially is plenary. See *Robinson* v. *Robinson*, 86 Conn. App. 719, 724, 862 A.2d 326 (2004).

"The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z. Section 46b-215 (a) (7) (B) plainly and unambiguously provides that the guidelines factor into a court's determination of support under section 46b-215 (a) (7) (A) only when there first has been a finding of neglect or refusal: "*In the determination of support due based on neglect or refusal to furnish support prior to the action*, the support due for periods of time prior to the action shall be based upon the obligor's ability to pay during such prior periods, as determined in accordance with the child support guidelines established pursuant to section 46b-215a . . . ." (Emphasis added.) Without a finding of neglect or refusal to furnish support prior to the action, there is no determination of support to be made under § 46b-215 (a) (7) (A) and therefore no need to refer to the guidelines in the manner required by § 46b-215 (a) (7) (B).

The plaintiff's reliance upon *Maturo* and § 46b-215b (a) for the proposition that the guidelines factor into all court determinations of child support, including past due child support, ignores the plain and unambiguous language of § 46b-215b (c), which provides in relevant part: "In any proceeding for the establishment . . . of a child support award, the child support and arrearage guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in . . . [§] 46b-215 . . . ." Therefore, in crafting an award of past due child support in a paternity action on the basis of neglect or refusal to pay such support, a court must first consider the organization and requirements of § 46b-215 (a) (7) and its subparagraphs, rather than the legal standards specified by the plaintiff.

Given our interpretation of the statutory scheme that underlies the plaintiff's claim for past due child support

in the paternity statutory context, we conclude that the court did not abuse its discretion in denying the plaintiff's request for the period from May 15, 2005 to April 30, 2008. Pursuant to the agreement between the plaintiff and the defendant, the defendant performed his obligations by paying approximately $90,000 in child support to the plaintiff for the support of their son during this period, and the plaintiff accepted and applied those payments for the benefit of their son. The court did not clearly err when it concluded, without referring to the guidelines, that the defendant neither neglected nor refused to furnish support during this period. The sum of the defendant's payments during this period is not insubstantial, and the plaintiff's extensive trial testimony demonstrated that she used these payments to help cover a significant part of the costs for her son's private school education and his engagement in extracurricular activities. We thus reject the plaintiff's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 46b-215 (a) (7) (A) provides: "The court or family support magistrate may also determine, order and enforce payment of any support due because of neglect or refusal to furnish support for periods prior to the action. In the case of a child born out of wedlock whose parents have not intermarried, a parent's liability for such support shall be limited to the three years next preceding the filing of a petition or written agreement to support pursuant to this section."

The plaintiff initially filed her paternity action on May 15, 2008. May 15, 2008, therefore, is the date upon which the three year period specified in § 46b-215 (a) (7) (A) is determined, even though the operative complaint is the amended version filed on June 12, 2008. On May 27, 2009, the court entered a child support order that required the defendant to pay child support to the plaintiff in the amount of $6235 per month, starting on June 1, 2009.

[2] The court also denied the plaintiff's request for additional attorney's fees with respect to work performed by Devlin since the January 19, 2010 pendente lite award. That denial is not at issue in the present appeal.

[3] Even though *DiLieto* postdates the trial court judgment, "[a]s a general rule, judicial decisions apply retroactively. . . . A decision will not be applied retroactively only if (1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 835 n.4, 59 A.3d 247, cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013). None of these considerations are at issue in the present matter.

[4] The court made the pendente lite award of attorney's fees to the plaintiff on January 19, 2010. The defendant paid $145,000 to the plaintiff on May 18, 2011, and $25,000 to her on September 1, 2011; the sum of these amounts represents the amount of the award that this court upheld.

[5] General Statutes § 46b-171 (a) (1) (B) provides in relevant part: "The court or family support magistrate shall order the defendant to pay [a] sum [of support and maintenance awarded under § 46b-171 (a) (1) (A)] to the complainant . . . and shall grant execution for the same and costs of suit taxed as in other civil actions, *together with a reasonable attorney's fee*, and may require the defendant to become bound with sufficient surety to perform such orders for support and maintenance. . . ." (Emphasis added.)

[6] General Statutes § 46b-171 (a) (1) (A) provides in relevant part: "If the defendant is found to be the father of the child, the court or family support magistrate shall order the defendant to stand charged with the support and maintenance of such child, with the assistance of the mother if such mother

is financially able, as the court or family support magistrate finds . . . to be reasonably commensurate with the financial ability of the defendant, and to pay a certain sum periodically until the child attains the age of eighteen years or as otherwise provided in this subsection. . . ."

[7] Despite the plaintiff's reference to several deviation criteria, she largely relies upon two of them in subdivision (6), which provides in relevant part: "In some cases, there may be special circumstances not otherwise addressed in this section in which deviation from presumptive support amounts may be warranted for reasons of equity. Such circumstances are limited to the following . . . (C) Best interests of the child. (D) Other equitable factors." Regs., Conn. State Agencies § 46b-215a-3 (b).

[8] The issue of whether the attorney's fees that the plaintiff incurred in defending her son as his parent and next friend constitute "special child support" that she may seek from the defendant does not affect our resolution of the plaintiff's claim. As the court noted: "[E]ven if the court were inclined to award as child support the attorney's fees incurred in defending the child in an independent action, there is no basis for the court to separate those fees from the fees incurred in defending the plaintiff." Therefore, we express no opinion regarding the issue.

[9] Even if the plaintiff breached the agreement between the parties, that does not relieve the defendant of his continuing obligation to his son to provide child support within the reasonable limits of his ability to do so: "The common-law duty of parents to provide for their children preceded recognition and enforcement of that duty in our statutory scheme. . . . The [parent's] duty to support . . . is a continuing obligation, which ordinarily exists even apart from any judgment or decree of support. . . . A parent has both a statutory and common law duty to support his minor children within the reasonable limits of his ability. . . . Our statutes reflect the parental duty of child support. See, e.g., General Statutes § 46b-37 (b) (it shall be the joint duty of each spouse to support his or her family); General Statutes § 46b-84 (a) ([u]pon or subsequent to the . . . dissolution of any marriage or the entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, *if the child is in need of maintenance* . . .); General Statutes § 46b-215 (a) (1) ([t]he Superior Court . . . may make and enforce orders for payment of support against any person who neglects or refuses to furnish *necessary support* to such person's . . . child under the age of eighteen . . . according to such person's ability to furnish such support . . .). These statutes embody the strong public policy interest of the state pertaining to matters of needed or necessary child support. It is . . . in the interest of society that the child be supported by those obligated to support the child and that the child not be required to seek public assistance to satisfy those needs unless otherwise necessary." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 119 Conn. App. 194, 201–202, 986 A.3d 1119 (2010), rev'd on other grounds, 305 Conn. 539, 46 A.3d 112 (2012).

[10] "*Noblesse oblige*—From one to whom much is given, much is expected." (Emphasis in original.) *Hayes* v. *Alabama Court of Judiciary*, 437 So. 2d 1276, 1278 (Ala. 1983).