MARGARET CULVER *v.* MICHAEL CULVER
(AC 30500)

Robinson, Bear and Borden, Js.

Argued October 18, 2010—officially released March 15, 2011

*Karen L. Dowd,* with whom were *Brendon P. Levesque* and, on the brief, *Dana M. Hrelic,* for the appellant (defendant).

*Samuel V. Schoonmaker IV,* with whom, on the brief, were *Edward Nusbaum* and *Wendy Dunne DiChristina,* for the appellee (plaintiff).

*Opinion*

BORDEN, J. The defendant, Michael Culver, appeals from the judgment of the trial court granting certain relief requested in the postjudgment motion for contempt filed by the plaintiff, Margaret Culver. The defendant claims that the court improperly (1) modified his

existing child support order, (2) denied his requested equitable relief and (3) awarded attorney's fees to the plaintiff. We disagree and, accordingly, affirm the judgment of the trial court.

The record discloses the following relevant factual and procedural history. On January 14, 1994, the court dissolved the parties' marriage, finding that it had broken down irretrievably. At the time of dissolution, the parties entered into a written stipulation that was incorporated by reference into the dissolution judgment. Article VII of the stipulation addressed the issue of child support for the parties' minor twin daughters, C and M, and provided, inter alia, that the defendant would pay monthly child support in the amount of $2500 ($1250 per child). Additionally, the stipulation provided that the plaintiff would have sole custody of the children and that she would get the defendant's consent if the children were to go to private school. The stipulation also included a clause that stated: "No modification or waiver of any of the terms of [the stipulation] shall be valid *unless the same shall be in writing and executed with the same formality* as [the stipulation]." (Emphasis added.) In addition, the court ordered, by way of its dissolution judgment, that if either party were found in contempt or filed a motion in connection with article VII of the stipulation, "the nonprevailing party [would] pay the other [party's] reasonable attorney's fees and costs."

In or about November, 1996, the defendant prepared an amendment to the stipulation (amendment) that provided, inter alia, for an increase in his child support obligation from $2500 to $3500 per month. Both parties signed the amendment, but it was not witnessed or acknowledged and, therefore, was not executed with the formality required by the stipulation for modification. Thereafter, the defendant filed a motion to modify

the dissolution judgment in accordance with the amendment, but no action was taken on the motion, and it never became an order of the court.

In the fall of 1998, the plaintiff and the defendant had a series of discussions concerning their children's education and ultimately agreed that both C and M should attend private school.[1] The parties, thereafter, orally agreed to modify the stipulation with respect to the defendant's child support obligation. At trial, the plaintiff testified that, pursuant to the oral agreement, the defendant's monthly $2500 child support obligation essentially would be waived, and, instead, he would pay the private school and college expenses for their children. The defendant, on the other hand, claimed that the oral agreement only contemplated his paying for the children's private school tuition and that he never agreed to pay for their college expenses. It is undisputed that the oral agreement never was reduced to a writing and that neither party requested the court's approval of the modification.

Pursuant to the oral agreement, the defendant ceased paying child support in September, 1998, and began paying the private school expenses for C and M. This fiscal arrangement continued until 2006, when the children began to matriculate at their respective colleges and the defendant refused to render payments toward one child's college tuition.[2] The plaintiff, thereafter, borrowed funds to pay for that child's college expenses.

In August, 2006, the plaintiff filed a motion for contempt, claiming that the defendant had failed to comply

[1] At that time, C and M were attending public school in Katonah, New York, and both were enrolled in a special education program.

[2] At the time of the hearing, M attended Cornell, and C attended Colorado College. The record reflects that the defendant cosigned a student loan to pay for C's first year of college expenses but not for M's. At the time of trial, the plaintiff testified that she was then paying for both of her children's college expenses.

with his child support obligations since September, 1998. In her motion, she sought past due child support and requested that the defendant be found in contempt for his failure to make those payments and that he pay her reasonable costs and attorney's fees pertaining to the motion. In response, the defendant filed a four count cross complaint that sought relief under theories alleging abuse of process, breach of contract, quantum meruit and fraud.[3] In May, 2007, the plaintiff filed another motion for contempt that was substantially the same as the August, 2006 motion. In response to the May, 2007 motion, the defendant also raised three special defenses to the plaintiff's claim for past due support, namely, equitable estoppel, waiver and laches. Those defenses were premised on the fact that the defendant, pursuant to the parties' oral agreement, had paid for the children's private schooling expenses in lieu of making child support payments. According to the defendant, these payments should have been credited against the plaintiff's claim for past due support. At trial, the defendant provided evidence demonstrating that he had paid $478,728.56 for private school room, board and tuition for his children pursuant to the parties' oral agreement.

The court, by memorandum of decision, first found that the oral agreement concerning the defendant's child support obligation was ineffective to modify the original written stipulation that had been incorporated into the dissolution judgment. The court, therefore, found that under the terms of the stipulation, the defendant owed the plaintiff $225,000 in child support. The court considered each of the defendant's cross claims and special defenses in turn and rejected them. Accordingly, the court ordered the defendant to pay the plaintiff $225,000 for past due child support and refused to award him any credit for payments he had made toward

[3] The court file indicates in handwriting that the title of the defendant's "Cross Complaint" was crossed out and renamed "Reply."

C's and M's private schooling. The court also awarded the plaintiff attorney's fees in the amount of $25,000. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that by ordering him to pay the $225,000 child support arrearage, the court improperly modified the existing child support order. He contends that by failing to credit the payments he made toward C's and M's private school expenses against this arrearage, the court modified the support order absent a motion requesting such relief.[4] See *Guss* v. *Guss*, 1 Conn. App. 356, 361, 472 A.2d 790 (1984) (trial court cannot modify child support orders on own initiative). We are not persuaded.

We begin by setting forth certain legal principles relevant to this claim. "In Connecticut, the general rule is that a court order must be followed until it has been modified or successfully challenged. *Eldridge* v. *Eldridge*, 244 Conn. 523, 530, 710 A.2d 757 (1998); *Behrns* v. *Behrns*, 80 Conn. App. 286, 289, 835 A.2d 68 (2003), cert. denied, 267 Conn. 914, 840 A.2d 1173 (2004). Our Supreme Court repeatedly has advised parties against engaging in self-help and has stressed that an order of the court must be obeyed until it has been modified or successfully challenged. . . . *Sablosky* v. *Sablosky*, [258 Conn. 713, 719, 784 A.2d 890 (2001)] . . . ." (Citations omitted; internal quotation marks omitted.) *Riscica* v. *Riscica*, 101 Conn. App. 199, 200–201, 921 A.2d 633 (2007). Additionally, "[i]n a contempt proceeding, *even in the absence of a finding of contempt,* a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Emphasis in

_____

[4] In his brief, the defendant claims that the court's order was both a functional modification and a retroactive modification of the child support order.

original; internal quotation marks omitted.) *Fuller* v. *Fuller*, 119 Conn. App. 105, 115, 987 A.2d 1040, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010).

Although the defendant submitted evidence that demonstrated that he had contributed nearly $480,000 to his children's private school expenses—during which time he did not pay child support to the plaintiff in the amount of $225,000—we disagree with his assertion that the court's order retroactively increased his child support obligation. The effect of the court's order did not modify the defendant's support obligation in a manner that was inconsistent with the parties' original stipulation. Simply stated, the order itself did not require him to make any payments beyond those legally agreed on by the parties and incorporated into the dissolution judgment.

As stated previously, upon the dissolution of their marriage, the parties stipulated that the defendant would be obligated to pay monthly child support in the amount of $2500 to the plaintiff, and that agreement was incorporated into the dissolution judgment. The defendant's voluntary acceptance of a subsequent obligation to pay private school tuitions in no way lessened his court-ordered child support obligation. The court properly concluded that the court-ordered obligation was not modified by the parties' subsequent oral agreement that was not made an order of the court. See *Albrecht* v. *Albrecht*, 19 Conn. App. 146, 151, 562 A.2d 528 ("[d]ecrees in a dissolution action cannot be modified by acts of the parties without further decree or order by the court"), cert. denied, 212 Conn. 813, 565 A.2d 534 (1989). The court also found, and the record accurately reflects, that his nonpayment of child support for nearly eight years following the parties' oral agreement resulted in an arrearage of $225,000. Accordingly, we cannot conclude that the court's order directing the defendant to pay this past due support arrearage amounted to a modification, retroactive or otherwise, of the existing child support order.

## II

We next turn our attention to the defendant's claim that the court improperly determined that an award for past due child support in this case was not subject to

certain equitable considerations. Specifically, he claims that the court improperly denied his defense of equitable estoppel and erroneously found that the plaintiff was not unjustly enriched.[5] We address each claim in turn.

## A

The defendant claims that the court improperly found that equitable estoppel did not limit the plaintiff's relief in this case. Specifically, the defendant claims that the court could not reasonably find that the defendant had failed to establish that he had changed his position to his detriment as a result of the parties' oral agreement. We disagree.

"Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct." *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 60, 873 A.2d 929 (2005). "Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby [the party] is absolutely precluded, both at law and in equity, from asserting rights . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . .

"We [have] recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) *Union Carbide Corp.* v. *Danbury*, 257 Conn. 865, 873, 778 A.2d 204 (2001).

"The party claiming estoppel . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been

---

[5] At oral argument before this court, the defendant abandoned his claim in connection with his defense of laches.

made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law." (Internal quotation marks omitted.) *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 826–27, 3 A.3d 992 (2010).

In its original language in its memorandum of decision, the court found that, given the defendant's financial and professional status, "[*i*]*t is quite conceivable that a court would have ordered the defendant to pay* for all or part of the private schooling for his daughters in addition to paying child support." (Emphasis added.) As a result, the court determined that the defendant had failed to demonstrate that he had changed his position to his detriment while relying on the parties' oral agreement and that he, therefore, could not establish that the doctrine of equitable estoppel should have barred the plaintiff's relief.

Thereafter, the defendant moved in the trial court for articulation of, inter alia, the court's factual basis for this finding. More specifically, the defendant moved for articulation in this regard as follows: "Please state the legal bases for the trial court's conclusion that because '[i]t is quite conceivable that a court would have ordered the defendant to pay for all or part of the private schooling for his daughters in addition to paying child support,' there was no unjust enrichment to the plaintiff"; and "[p]lease state the legal and factual bases for finding that *the defendant would have been required to pay* for at least a portion of the private schooling in addition to the child support." (Emphasis added.) Thus, it is apparent that, at that stage of the case, the defendant had construed the trial court's memorandum of decision, despite its original, somewhat equivocal language, as having found that the defendant *would have been required to pay* for at least a portion, if not all of the children's private school education if the plaintiff had sought an order for him to do so.

The trial court denied the motion for articulation, and the defendant moved for review in this court. This court granted the motion in part and ordered the trial court to articulate "the factual basis for its conclusion

that the [defendant] *would likely have been ordered to pay for the children's private school tuition in addition to child support . . . ."* (Emphasis added.) Thus, it is apparent that this court, like the defendant, construed the trial court's finding as much less equivocal than its original language in its memorandum of decision seemed to suggest. In response, the trial court stated: "The court hereby articulates . . . its factual basis for its conclusion that the [defendant] *would have been ordered to pay* for the children's private school tuition in addition to child support." (Emphasis added.) In addition, the trial court specifically noted, in a footnote to the preceding quoted sentence, its original phrasing from its memorandum of decision, namely, "*[i]t is quite conceivable that a court would have ordered* the defendant to pay for all or part of the private schooling for his daughters in addition to paying child support." (Emphasis added; internal quotation marks omitted.)[6] Thus, the record convincingly demonstrates that the parties, the trial court and this court all viewed the trial court as having found that, had the plaintiff moved in the trial court to require the defendant to pay for the children's private schooling, the trial court would have granted that motion.

In its approximately two page articulation of the legal and factual bases for this finding, the trial court first stated the applicable law, as follows. The court noted that a "trial court has the power to direct one or both parents to pay for private schooling, if the circumstances warrant, and may exercise that power in its sound discretion, giving consideration to all of the circumstances, including the financial ability of the parties, the availability of public schools, the schools attended by the children prior to the divorce and the special needs and general welfare of the children. *Cleveland* v. *Cleveland,* 161 Conn. 452, 461, 289 A.2d 909 (1971), on appeal after remand, 165 Conn. 95, 328 A.2d 691 (1971)." See *Hardisty* v. *Hardisty,* 183 Conn. 253, 262, 439 A.2d 307 (1981). The court then summarized the factual bases for its conclusion, as follows. The parties' stipulation provided for the possibility of private schooling at the option of the plaintiff and the

---

[6] The defendant has never challenged this shift in phrasing of the trial court's finding.

consent of the defendant, which could not be unreasonably withheld. When the children were attending public schools, "they were very unsuccessful." They had learning disabilities and had been in special education classes since the second grade. In addition, the parties had discussed private school prior to their enrollment therein, the children would be more successful in a private school, and both had graduated from private school and were attending college.

The defendant argues that this finding was clearly erroneous. Our review of the record, however, reveals that the court's finding in this regard has ample basis in the evidence in the record, specifically, the parties' stipulation and the plaintiff's testimony, which the court found to be credible. In addition, the record establishes that the defendant was an accomplished and sophisticated businessman with a far greater financial ability than that of the plaintiff to pay for his children's private schooling. Consequently, we conclude that the court's finding that the defendant did not change his position to his detriment was not clearly erroneous.

In addition, the facts of this case do not demonstrate that the defendant exercised due diligence in ascertaining the legal effect of the parties' oral agreement. "It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Internal quotation marks omitted.) *Riscica* v. *Riscica*, supra, 101 Conn. App. 205; see also *Boyce* v. *Allstate Ins. Co.*, 236 Conn. 375, 385–86, 673 A.2d 77 (1996). The defendant has offered no proof that tends to demonstrate that he exercised due diligence to discover the true state of the parties' agreement or that he lacked the means to obtain such information. Quite the opposite, the record reflects that the defendant, a sophisticated and accomplished businessman with access to knowledgeable legal counsel, already had been a party to a formally executed and court approved stipulation concerning his child support obligation and at one point had drafted a written amendment to the stipulation, had both parties sign the amendment, and had filed a motion with the court to modify the dissolution judgment in accordance with the amendment. Consequently, we conclude that the

defendant reasonably knew or should have known that the parties' oral agreement was unenforceable absent proper authorization by the court, and that by not seeking such authorization, he did not exercise the diligence required to establish a claim of equitable estoppel. The defendant cannot seek equitable relief premised on a theory of estoppel due to his own failure to cause the parties' oral agreement to become a court order. See *Celentano v. Oaks Condominium Assn.*, 265 Conn. 579, 615, 830 A.2d 164 (2003); see also *Novella v. Hartford Accident & Indemnity Co.*, 163 Conn. 552, 565, 316 A.2d 394 (1972) ("[w]e cannot predicate an estoppel in favor of one whose own omission or inadvertence has contributed to the problem at hand"); *Currie v. Marano*, 13 Conn. App. 527, 531, 537 A.2d 1036 ("[o]ne setting up an estoppel *in pais*, is himself bound to the exercise of good faith and due diligence to know the truth" [emphasis in original; internal quotation marks omitted]), cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988). Accordingly, we conclude that the court correctly determined that the plaintiff's claim for past due support was not barred by the doctrine of equitable estoppel.

To the extent that the defendant claims that the court improperly failed to credit all or some portion of his payments for C's and M's private schooling on general equitable grounds, we stress that our "courts have recognized that the decision to allow or disallow credit lies within the sound discretion of the trial court." *Goold v. Goold*, 11 Conn. App. 268, 273, 527 A.2d 696, cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987); see also *Lawrence v. Lawrence*, 92 Conn. App. 212, 217, 883 A.2d 1260 (2005). Because "[a] trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases . . . its orders in such cases will not be reversed unless its findings have no reasonable basis in fact or it has abused its discretion, or unless, in the exercise of such discretion, it applies the wrong standard of law." *Crowley v. Crowley*, 46 Conn. App. 87, 90, 699 A.2d 1029 (1997). Our thorough review of the record, briefs and arguments of both parties reveals that, although the defendant may have believed that he was entitled to a credit for the expenditures he had made on behalf of his children, the court did not abuse its discretion by refusing to excuse his failure to pay child support in accordance with the parties' written stipulation. See *Lawrence v. Lawrence*,

supra, 217 (no abuse of discretion where trial court did not excuse nonpayment of child support even though support obligor believed he was entitled to credit for voluntary expenditures). Thus, we agree with the defendant that the court could have exercised its equitable discretion to relieve him of all or some portion of his support obligation, but it was not an abuse of discretion for the court to have declined to do so.

B

Next, the defendant claims that the court improperly found that he was not entitled to restitution on the theory that the plaintiff was unjustly enriched. We do not agree.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Breen* v. *Judge*, 124 Conn. App. 147, 158–59, 4 A.3d 326 (2010).

"[E]quitable remedies are not bound by formula but are molded to the needs of justice. . . . Our Supreme Court has described unjust enrichment as a very broad and flexible equitable doctrine. . . . That doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of

someone else, obtain something of value to which [the party liable] was not entitled? . . . Review of a trial court's resolution of that question is deferential. The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Stewart* v. *King*, 121 Conn. App. 64, 71, 994 A.2d 308 (2010).

The defendant contends that because the court "did not unequivocally find that the defendant would have [had] to [have paid] the entire amount" for C's and M's private school expenses, "the plaintiff *may* have been obligated to pay the rest of the costs . . . ." (Emphasis added.) Consequently, the defendant maintains that the court's determination on his unjust enrichment claim was clearly erroneous, as the plaintiff was directly benefited by its order. He reasons that any portion of the private school expenses that she may have been obligated to pay, but did not pay per the parties' oral agreement, is money that she now does not have to contribute to her children's private school expenses, and, therefore, a benefit that has inured to her.

Our prior discussion in part II A of this opinion undermines the premise of the defendant's contention. First, despite the somewhat equivocal nature of the court's language in its memorandum of decision, its articulation made it clear that its ultimate finding, in accord with the understanding of the parties and this court, was that the defendant would have been required to pay for all of the costs of the children's private schooling. Second, although it is true that, in a subsequent portion of the memorandum of decision, the trial court did refer to its earlier formulation of its finding in the manner referred to by the defendant, to the extent that that formulation differs from its finding as ultimately articulated, it does no more than create an ambiguity in the court's decision. Faced with such an ambiguity, we construe the court's decision to support, rather than to

undermine, its judgment. *Kiniry* v. *Kiniry*, 299 Conn. 308, 333, 9 A.3d 708 (2010).

Furthermore, the court did not endorse the defendant's argument that it was "highly likely" that the plaintiff would have been ordered to contribute to the children's educational expenses. On the basis of the record before us, the defendant has failed to establish conclusively that the plaintiff benefited unjustly from the court's ordering him to pay his child support arrearage. We conclude, therefore, that the court's finding that the plaintiff was not unjustly enriched was not clearly erroneous.

### III

Finally, the defendant claims that the court improperly awarded attorney's fees to the plaintiff. Specifically, he argues that attorney's fees were awarded improperly to the plaintiff on the basis of General Statutes § 46b-87[7] when he was not found to have been in contempt. Although we agree with the defendant that an award of attorney's fees pursuant to § 46b-87 requires a finding of contempt; see *Berglass* v. *Berglass*, 71 Conn. App. 771, 788, 804 A.2d 889 (2002);[8] we conclude that the award in this case was proper on the basis of the terms of the dissolution judgment.

The following additional facts are relevant to the resolution of this issue. In its memorandum of decision, the court, quoting *Esposito* v. *Esposito*, 71 Conn. App.

[7] General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee . . . such sums to be paid by the person found in contempt. . . ."

[8] For clarification, we note that the court had the authority to award attorney's fees, pursuant to General Statutes § 46b-62, without first finding the defendant in contempt. See *Dobozy* v. *Dobozy*, 241 Conn. 490, 500, 697 A.2d 1117 (1997). Section 46b-62, however, contains a requirement that the court, in issuing its award of attorney's fees, consider the respective financial abilities of the parties along with the statutory criteria set forth in General Statutes § 46b-82. *Berglass* v. *Berglass*, supra, 71 Conn. App. 789. Although the court did not explicitly address such criteria in the present case, the consideration of those factors is not a prerequisite to an award of attorney's fees issued under § 46b-87. See *Dobozy* v. *Dobozy*, supra, 499; *Medvey* v. *Medvey*, 83 Conn. App. 567, 575, 850 A.2d 1092 (2004).

744, 748, 804 A.2d 846 (2002), stated that "§ 46b-87 provides that the court may award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . The court awards attorney fees in the amount of $25,000." (Citation omitted; internal quotation marks omitted.) Following our granting of the defendant's motion for review, which he filed after his motion for articulation was denied, we ordered the court to articulate whether it found him in contempt. In its articulation, the court answered that question in the negative.

The defendant contends that the court abused its discretion by awarding attorney's fees pursuant to § 46b-87 when it expressly found that he was not in contempt.[9] See *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003) ("[i]t is well established that we review the trial court's decision to award attorney's fees for abuse of discretion"). This claim, however, fails to account for the express terms of the dissolution judgment. As stated previously, in its dissolution judgment, the court ordered that if either party was found in contempt *or filed a motion under article VII of the stipulation*, "the nonprevailing party [would] pay the other [party's] reasonable attorney's fees and costs." It is undisputed that the defendant, in response to the plaintiff's contempt motion, filed a four count cross complaint that asserted claims sounding in abuse of process, breach of contract, quantum meruit and fraud. It is also undisputed that the court rejected all of these claims. The defendant's failure to prevail on these claims, therefore, warranted an award of attorney's fees in favor of the plaintiff pursuant to the express terms of the dissolution judgment.

The defendant, by way of his reply brief, contends that we should decline to affirm the court's award of attorney's fees because the plaintiff did not properly raise this issue as an alternate ground to affirm in accordance with Practice Book § 63-4. We are not persuaded.

_____
[9] The defendant does not challenge the amount of the attorney's fee award on appeal.

Practice Book § 63-4 (a) (1) (A) provides that an appellee who wants to present an alternate ground on which to affirm a trial court's judgment shall file a preliminary statement of issues intended for presentation on appeal. Although the plaintiff did not designate her claim as an alternative ground for affirmance in a preliminary statement of the issues, the failure to do so does not necessarily preclude our consideration of this claim. "This court is not precluded . . . from reviewing an alternate ground that was not raised in accordance with Practice Book § 63-4 (a) (1) (A) so long as the appellant will not be prejudiced by consideration of that ground for affirmance." *State* v. *Osuch*, 124 Conn. App. 572, 580, 5 A.3d 976, cert. denied, 299 Conn. 918, 10 A.3d 1052 (2010).

In the present case, the plaintiff raised in her brief the claim that the court's award of attorney's fees may be affirmed on the basis of the dissolution judgment, giving the defendant an adequate opportunity to respond in his reply brief. Because the defendant was able to address that issue, and did so, it is appropriate for this court to consider the plaintiff's claim as an alternate ground for affirmance. See *Gerardi* v. *Bridgeport*, 294 Conn. 461, 466, 985 A.2d 328 (2010); *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 423 n.19, 797 A.2d 494 (2002); *State* v. *Osuch*, supra, 124 Conn. App. 580–81. Furthermore, the defendant did not claim either in his reply brief or at oral argument that he was prejudiced by the fact that the plaintiff's claim was not presented in a preliminary statement of the issues. Given the fact that neither party would be prejudiced by our doing so, we treat this claim as if it had been properly raised as an alternate ground for affirmance. See *Gerardi* v. *Bridgeport*, supra, 466.

The judgment is affirmed.

In this opinion the other judges concurred.