******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL ROGAN *v.* SALLY RUNGEE
(AC 37398)

Beach, Sheldon and Prescott, Js.

*Argued January 19—officially released May 3, 2016*

(Appeal from Superior Court, judicial district of New Britain, Hon. Joseph M. Shortall, judge trial referee.)

*Rose Longo-McLean*, for the appellant (plaintiff).

*Jon L. Schoenhorn*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. The plaintiff, Michael Rogan, appeals from the judgment of the trial court rendered, in part, in favor of the defendant, Sally Rungee, on her counterclaim for abuse of process, common-law vexatious litigation, and statutory vexatious litigation. On appeal, the plaintiff claims that the court improperly (1) awarded damages to the defendant for emotional distress for abuse of process, (2) awarded treble emotional distress damages, and (3) held that the plaintiff failed to prove his affirmative defense that he acted on the advice of legal counsel. We disagree and affirm the judgment of the trial court.

The following facts, as found by the trial court or undisputed in the record, and procedural history are relevant to our review. "It began . . . with an ill conceived but straightforward complaint by [the plaintiff] that [the defendant] had 'falsely and maliciously accused [him] of creating a public disturbance . . . [an infraction] of which [she] knew he was innocent.' That accusation, the complaint went on to allege, caused him to be arrested and charged with that offense and to suffer damage to his reputation and extreme emotional distress. The complaint correctly alleged further that the charge was subsequently nolled. This alleged conduct by [the defendant] gave rise to four counts in the complaint, namely, malicious prosecution (count one), slander (count two), and intentional and negligent infliction of emotional distress (counts three and four)." (Footnote omitted.)

This alleged malicious prosecution arose from events occurring in the early morning of January 3, 2008. The defendant had called the Berlin Police Department to complain about lights shining into her bedroom window from the rear of the plaintiff's house. Sergeant Chris Tralli and Officers Ryan Gould and Brian Falco of the Belin Police Department responded to the call. Although the plaintiff alleges that the lights in question were Christmas lights, upon arrival at the plaintiff's house, Officer Falco noted that "[t]he light in question was on the second story deck on the rear of [the plaintiff's] house and looked to be a blue LED strobe light similar to lights used in [vehicles] of volunteer firemen. The light was angled directly at [the defendant's] house and appeared to be done so deliberately." This was not the first time that the police had responded to a complaint about this light and had ordered the plaintiff to turn it off. Consequently, the plaintiff was issued an infraction ticket for creating a public disturbance. It was on the basis of receiving this infraction ticket that the plaintiff claimed that he was maliciously prosecuted by the defendant, although he was never arrested, never paid any fine, and never appeared in court concerning the infraction ticket.

"On January 5, 2009, the court, *Trombley, J.*, struck counts two, three, and four [of the plaintiff's complaint] for their failure sufficiently to allege the elements of the respective causes of action. [Although] the court denied the motion to strike count one [for malicious prosecution], it had barely survived, but it took three more years and a change in Connecticut law for count one of [the plaintiff's] complaint to be disposed of by summary judgment in favor of [the defendant]. . . .

"In the meantime, however, [the defendant] had upped the ante by filing a counterclaim that accused [the plaintiff] of abusing the court's process by bringing his malicious prosecution lawsuit 'not in pursuit of justice' but as 'improper retaliation for the efforts of [the defendant] to stop the harassing, bizarre, and criminal misconduct of [the plaintiff] over several years.' . . . [The defendant's] counterclaim sought damages also for intentional infliction of emotional distress, based on [the plaintiff's] alleged seeking of a warrant for [the defendant's] arrest for harassment, after she had made a telephone call to the fire department officials of the town of Berlin claiming that [the plaintiff, who was a volunteer firefighter] had engaged in inappropriate behavior and was mentally ill. A third count alleged a conspiracy between [the plaintiff] and Berlin fire and police officials to cause [the defendant] severe emotional distress.

"After she obtained summary judgment on the malicious prosecution count of [the plaintiff's] complaint in 2012, [the defendant] amended her counterclaim to include counts for common-law (count four) and statutory (count five) vexatious litigation. . . . Because all of the counts of [the plaintiff's] complaint had been stricken or had been disposed of by summary judgment in favor of [the defendant], by the time this case came on for trial on February 26, 2014, the only issues before the court were those raised by the [defendant's] five count counterclaim." (Footnotes omitted; citation omitted.)

A bench trial was held on February 26 and 27, and March 5, 2014. On July 23, 2014, the court issued a memorandum of decision with respect to liability only. The court held that the defendant had proved by a preponderance of the evidence all of the elements of abuse of process and common-law and statutory vexatious litigation. The court further held, however, that the defendant had failed to prove by a preponderance of the evidence all of the elements of intentional infliction of emotional distress and civil conspiracy. In the July 23, 2014 memorandum, the court deferred making a determination as to the appropriate amount of damages to award the defendant.

On November 6, 2014, the court issued a memorandum of decision with respect to damages. The court

determined that the defendant had proven $35,000 in emotional distress damages pursuant to her abuse of process (count one) and statutory vexatious litigation (count five) claims. The court trebled the emotional distress damages pursuant to General Statutes § 52-568 (2),[1] and awarded the defendant $105,000, as damages for those counts. The court further awarded the defendant the nominal sum of $1 in compensatory damages and $20,000 in reasonable attorney's fees as punitive damages for common-law vexatious litigation. In total, the defendant was awarded $125,001.[2] This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the court improperly awarded the defendant emotional distress damages for abuse of process. In support of this claim, the plaintiff sets forth two arguments.[3] First, he contends that the award of emotional distress damages was improper because the court improperly found that the malicious prosecution action initiated by the plaintiff was the cause of the defendant's emotional distress. Second, he contends that the court improperly awarded emotional distress damages because the evidence in the record was insufficient to establish all the elements of abuse of process, in particular, that his primary purpose in bringing the malicious prosecution action was improper. Although the plaintiff frames this claim as a challenge to the award of emotional distress damages for abuse of process, his arguments, in essence, challenge the merits of the court's liability determination. We are not persuaded by either argument.

A

The plaintiff first contends that the award of emotional distress damages for abuse of process was improper as a matter of law because the court improperly found that the malicious prosecution action initiated by the plaintiff was the cause of the defendant's emotional distress.[4] Specifically, the plaintiff argues that there is no evidence in the record to support the court's finding that the plaintiff's action caused the defendant's emotional distress. Rather, he argues, any emotional distress that the defendant experienced was due to other traumatic events that occurred at the time of the action, such as the defendant undergoing open heart surgery. In response, the defendant cites to multiple sections of her testimony at trial in which she described the emotional distress that she experienced as a direct result of the plaintiff's action. We are not persuaded by the plaintiff's argument.

The following additional facts, which the trial court reasonably could have found on the basis of the record, are relevant to this argument. At trial, the defendant was questioned about how she reacted to being served with the plaintiff's action, to which she responded: "I

was just beside myself. I said I can't believe that he's suing me because he broke the law." Then, in response to a question concerning how the action had affected her emotionally, the defendant stated that: "It changed my life dramatically, drastically. . . . I don't sleep well at night, I lock all my doors." Similarly, the defendant's husband testified at trial that the action had made her "very, very upset, distraught," and "[i]nconsolable." In its memorandum of decision, the court credited the defendant's testimony that the action had caused her emotional distress.

"Damages suffered through an abuse of legal process not malicious must be compensatory, that is compensation for the natural consequences resulting, which would include injury to the feelings because of the humiliation, disgrace or indignity suffered, together with injury to the person and physical suffering . . . ." *McGann* v. *Allen*, 105 Conn. 177, 184, 134 A. 810 (1926). Thus, for the court to properly award emotional distress damages for abuse of process, the abuse of process must have caused the defendant's emotional distress. Whether such causation exists is a question of fact. See *Burton* v. *Stamford*, 115 Conn. App. 47, 87, 971 A.2d 739, cert. denied, 293 Conn. 912, 978 A.2d 1108 (2009).

Our review of the trial court's factual findings is limited to deciding whether such findings were clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached." (Citation omitted; internal quotation marks omitted.) *Verspyck* v. *Franco*, 274 Conn. 105, 113, 874 A.2d 249 (2005). "Because the trial court had an opportunity far superior to ours to evaluate the evidence . . . every reasonable presumption is made in favor of the correctness of its ruling . . . ." (Internal quotation marks omitted.) *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 772, 717 A.2d 150 (1998).

In the present case, the defendant testified about the impact of the plaintiff's action on her emotional state. She and her husband testified that the action upset her and caused insomnia. The court credited that testimony. Accordingly, we conclude that the record supports the court's finding that the plaintiff's action caused emotional distress to the defendant, and, thus, the court properly awarded emotional distress damages.

B

Second, the plaintiff contends that the court improperly awarded emotional distress damages for abuse of process because there was insufficient evidence in the

record to support the trial court's conclusion that the defendant had met her burden to establish all the elements of abuse of process, particularly, that his primary purpose in bringing the malicious prosecution action was improper. Specifically, the plaintiff contends that the defendant produced no evidence that he had brought the malicious prosecution action in order to intimidate and harass her. We are not persuaded.

The following additional facts are necessary to resolve this aspect of the plaintiff's claim. On April 5, 2012, the plaintiff e-mailed his attorney, John Williams, that "[t]he suit worked as far as I'm concerned by keeping the [defendant] at bay the last four years." Although Williams testified that he did not recall the plaintiff stating that the purpose of the malicious prosecution action was to keep the defendant "at bay," he did admit that he thought that "[d]eterrence [was] a legitimate basis for a legal action."

In the court's July 23, 2014 memorandum of decision, it found that the plaintiff's action "was brought not for the purpose of obtaining just damages from [the defendant] but to continue the pattern of harassing behavior in which [the plaintiff] had previously engaged vis-à-vis the [defendant's] family and to intimidate [the defendant] from making any further complaints about him to the local authorities." In making this finding,[5] the court found persuasive that the plaintiff "confirmed this [improper] intention on his part in an e-mail to his attorney on April 5, 2012 . . . ." Furthermore, the court drew an adverse inference against the plaintiff for not testifying at trial, although he was present, pursuant to General Statutes § 52-216c.[6]

We first set forth the applicable standard of review for a challenge to the sufficiency of the evidence. "[W]e must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . [W]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . ." (Internal quotation marks omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 404, 948 A.2d 1009 (2008).

Keeping this standard of review in mind, we turn to the elements of the tort of abuse of process. "An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes

that the gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . . . Comment b to § 682 explains that the addition of 'primarily' is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987).

The plaintiff argues that the April 5, 2012 e-mail does not prove that he had an improper purpose for bringing the malicious prosecution action. We do not agree. The e-mail stated that the action "worked" by keeping the defendant "at bay." The court interpreted this phrase to mean that the action was successful because it achieved its intended purpose, to intimidate the defendant from making further lawful complaints to the police. The court's interpretation of the e-mail is reasonable, and, thus, we will defer to it. See *Bhatia* v. *Debek*, supra, 287 Conn. 404 ("[w]e give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it" [internal quotation marks omitted]).

If the plaintiff's statement in the e-mail about keeping the defendant "at bay" was meant in some other way, he had the opportunity to testify at trial as to what he actually meant by this statement. The plaintiff also could have offered testimony establishing that he had brought the malicious prosecution action for a legitimate purpose. The plaintiff chose not to avail himself of this opportunity and the court exercised its discretion, which is not challenged on appeal,[7] by drawing an adverse inference against the plaintiff. See General Statutes § 52-216c. In light of this adverse inference, the April 5, 2012 e-mail supports the court's factual finding that the plaintiff's primary purpose in bringing the malicious prosecution action was improper. Accordingly, we conclude that there was sufficient evidence in the record to support the court's determination that all the elements of abuse of process were met, and, thus, the court properly awarded emotional distress damages.

## II

The plaintiff next claims that the court improperly awarded treble damages for abuse of process. Specifically, the plaintiff argues that the court lawfully could treble damages only for statutory vexatious litigation pursuant to § 52-568 (2), but that the court awarded them for abuse of process. The defendant responds that, viewing the judgment as a whole, it is clear that the court properly awarded treble damages for statutory vexatious litigation, and, that to the extent that the court entered treble damages for abuse of process in the concluding paragraph of the judgment, this was

merely a clerical error that can be corrected at any time. We agree with the defendant that, in light of the judgment as a whole, the award of treble damages was proper.

The following additional procedural history is relevant to this claim. The court issued a memorandum of decision with respect to liability only on July 23, 2014. The court, however, deferred making a determination as to the appropriate amount of damages to award the defendant. On November 6, 2014, the court issued a memorandum of decision with respect to damages (November 6, 2014 judgment). In the November 6, 2014 judgment, the court discussed the amount of damages awarded under each count separately. The court determined that the defendant was entitled to $35,000 for emotional distress for abuse of process. The court then ordered that "[b]ased on [its] finding for [the defendant] on count five of her counterclaim [for statutory vexatious litigation], the damages awarded on count one for emotional distress are trebled to $ 105,000 pursuant to General Statutes § 52-568 (2)." In the concluding paragraph, containing a tally of all the damages awarded, however, the court indicated an award for compensatory damages in the amount of $105,000 under count one.[8] There was no amount of damages entered under count five in the concluding paragraph.[9]

"The law of judgments . . . is well settled. The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.) *Moasser* v. *Becker*, 107 Conn. App. 130, 135, 946 A.2d 230 (2008). If "[f]aced with . . . an ambiguity, we construe the court's decision to support, rather than to undermine, its judgment." *Culver* v. *Culver*, 127 Conn. App. 236, 250–51, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011). "The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances. . . . We review such questions of law de novo." (International quotation marks omitted.) *Racsko* v. *Racsko*, 102 Conn. App. 90, 92, 924 A.2d 878 (2007). Additionally, "our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013).

For a court to properly award treble damages under a statute authorizing such damages, the fact finder must "[find] for the [party requesting the treble damages] under the statutory cause of action authorizing these extraordinary damages, and not for any other alleged cause of action." *DeMilo* v. *West Haven*, 189 Conn. 671, 676, 458 A.2d 362 (1983). Thus, in the present case, the award of treble damages was proper only if it was awarded under count five for statutory vexatious litigation pursuant to § 52-568 (2).

Our review of the November 6, 2014 judgment leads us to conclude that the only reasonable interpretation of that judgment is that the treble damages were awarded for statutory vexatious litigation, not for abuse of process. The court considered damages under each count separately. After discussing the damages that the defendant was entitled to for abuse of process, the court, in a separate paragraph, awarded damages for statutory vexatious litigation. The court specifically stated that it was trebling the emotional distress damages "[b]ased on [its] finding for [the defendant] on count five of her counterclaim . . . pursuant to General Statutes § 52-568 (2)." Although the concluding paragraph of the judgment, if viewed in isolation, would suggest that the treble damages were awarded for abuse of process; see footnote 8 of this opinion; the court's statement that it was awarding emotional distress damages pursuant to the statutory vexatious litigation claim leads us to conclude that the judgment as a whole should be interpreted as an award of treble damages for statutory vexatious litigation, rather than for abuse of process.[10] Accordingly, we conclude that the award of treble damages was proper.

### III

Finally, the plaintiff claims that the court improperly held that, with regard to statutory and common-law vexatious litigation, the plaintiff failed to prove his affirmative defense that he relied on the advice of counsel. Specifically, he argues that the court improperly found that he did not give a full and fair statement of all the facts within his knowledge to his attorney, a necessary element of the defense. The defendant responds that the record supports the court's factual finding, especially in light of the adverse inference that the court reasonably drew against the plaintiff, pursuant to § 52-216c, because he did not testify at trial. We agree with the defendant.

The following additional facts are necessary for our analysis of this claim. In the plaintiff's second revised complaint, the plaintiff alleged that "the defendant falsely and maliciously accused the plaintiff of creating a public disturbance in the vicinity of his . . . dwelling by having Christmas lights on his property." On the basis of this allegedly false accusation, the plaintiff

claimed that the defendant's conduct constituted malicious prosecution, slander, intentional infliction of emotional distress, and negligent infliction of emotional distress. After the plaintiff's claims were disposed of and only the defendant's counterclaim remained to be tried, in his answer to the amended counterclaim, the plaintiff asserted the special defense that he relied on the advice of counsel.

The plaintiff, although present throughout the trial, did not testify at trial. In lieu of testifying, a portion of the plaintiff's deposition transcript was admitted without objection as a full exhibit. In the portions of the deposition transcript admitted into evidence, the plaintiff did not discuss what he told his counsel, Williams, prior to Williams filing the complaint against the defendant for malicious prosecution, nor did he discuss what advice Williams gave and whether he relied on that advice. On the basis of the plaintiff's failure to testify at trial, the court drew an adverse inference against the plaintiff pursuant to § 52-216c.

The plaintiff, however, did offer at trial the testimony of Williams. Williams testified that, when he wrote the complaint, he was under the impression that the blue lights, which were the basis for the infraction ticket for creating a public disturbance, were Christmas lights: "If I thought they were strobe lights, I wouldn't have characterized them as Christmas lights." Williams' belief that the lights in question were Christmas lights was based solely on what the plaintiff had told him. Williams could not recall whether he had viewed the police report from January 3, 2008, which was admitted into evidence at trial and stated that the lights in question "looked to be a blue LED strobe light similar to lights used in [vehicles] of volunteer firemen." Williams also could not recall whether, prior to filing the complaint, he had been aware of the fact that on December 30, 2007, four days prior to the night in question, there had been a complaint about the lights and a police officer had warned the plaintiff to turn the lights off at night, describing them as "a blue strobe light . . . facing and flashing towards the . . . [defendant's] bedroom."

Williams also testified that he did not speak to anyone besides the plaintiff in preparing the complaint. He never spoke with the defendant or any of the police officers who were present when the plaintiff was issued the infraction ticket. He relied primarily on the plaintiff's version of events, although he did review some documents, including the infraction ticket.

In its July 23, 2014 memorandum of decision, the court held that the plaintiff "failed to prove by a preponderance of the evidence the elements of his defense that he acted on the advice of counsel. In particular, he has failed to prove that the advice given him by counsel was given 'after a full and fair statement of all

the facts within [the plaintiff's] knowledge, or which [the plaintiff] was charged with knowing.' "[11] The court did not expand upon what evidence it relied upon in determining that the plaintiff did not give a full and fair statement of the facts to Williams, and the plaintiff did not seek an articulation on this finding.

"Advice of counsel is a complete defense to an action of . . . [malicious prosecution or] vexatious suit when it is shown that the defendant . . . instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, or which he was charged with knowing. . . . The defendant has the burden of proof with respect to this special defense. . . . Whether there was a full and fair disclosure of material facts as required by the advice of counsel defense is a question of fact . . . and [a]ppellate review of findings of fact is limited to deciding whether such findings were clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Verspyck* v. *Franco*, supra, 274 Conn. 112–13. Thus, we look to see whether there is any evidence in the record to support the court's factual finding. Id., 113.

"In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Internal quotation marks omitted.) *Schaeppi* v. *Unifund CCR Partners*, 161 Conn. App. 33, 43, 127 A.3d 304, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015).

Although a plaintiff is not required to testify in order to prove the defense of reliance on advice of counsel; see id., 44 ("[no] specific evidence from designated witnesses must be introduced in order to satisfy the element of good faith reliance"); a plaintiff must prove both good faith reliance on counsel's advice and that he or she gave counsel a full and fair statement of the facts. Id., 42. Furthermore, an adverse inference can be drawn against a plaintiff if he or she is present at trial but does not testify. See General Statutes § 52-216c.

In determining whether a plaintiff gave a full and fair statement of the facts within his or her knowledge to counsel, "reliance on whether the omitted information would have had any impact on counsel's decision to bring the allegedly vexatious action . . . is irrelevant . . . because, as a matter of law, showing an impact on an attorney's ultimate course of action is not an element of the defense of reliance on counsel." (Citations omitted.) *Verspyck* v. *Franco*, supra, 274 Conn. 118. The ultimate issue is whether the plaintiff failed to provide his or her counsel with a fact within his or her knowledge that was material to the action. See id., 117–18 n.13. In other words, a client should not be permitted to rely upon the defense of advice of counsel

if the client did not disclose all of the material facts related to a potential claim, because the lawyer cannot render full and accurate legal advice regarding whether there is a good faith basis to bring the claim in the absence of knowledge of all material facts. In such instances, a client's reliance on the advice of counsel is unreasonable regardless of whether the material facts would have altered counsel's assessment of the validity of the claim. Accordingly, in the present case, the issue is whether the record supports the court's factual finding that the plaintiff failed to provide Williams with some fact within his knowledge that was material to the malicious prosecution action.

The court did not specify the subordinate facts underlying its factual finding that the plaintiff failed to make a full and fair disclosure of material facts to his counsel. The burden, however, is on the appellant to seek an articulation, which the plaintiff failed to do. See *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 284, 286, 25 A.3d 632 (2011) ("[W]e repeatedly have stated that it is the appellant's responsibility to provide an adequate record for review . . . . Noting . . . that the defendants failed to supplement this limited record by filing a motion for articulation, we defer to the trial court's judgment." [Internal quotation marks omitted.]).

The record, nonetheless, supports the court's factual finding. On the basis of the evidence in the record and the reasonable inferences drawn therefrom, the court reasonably could have found that the lights in question were LED strobe lights and that the plaintiff had not informed Williams of this fact. This omitted fact concerned the subject matter at the very heart of the plaintiff's malicious prosecution action, namely, whether the defendant falsely accused the plaintiff of creating a public disturbance. Whether the lights in question were Christmas lights or LED strobe lights would have affected significantly a court's determination of whether the defendant falsely accused the plaintiff of making a public disturbance. Thus, the court reasonably could have concluded that this omitted fact was material to the malicious prosecution action.

The evidence in the record supports the court's factual finding that the plaintiff did not make a full and fair statement of all facts within his knowledge or which he was charged with knowing when he related to Williams that the defendant falsely and maliciously accused him of creating a public disturbance. Accordingly, we conclude that the court properly held that the plaintiff failed to prove his special defense of reliance on the advice of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-568 provides in relevant part: "Any person who commences and prosecutes any civil action or complaint against another

. . . (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[2] We note that the court's finding that the defendant suffered emotional distress entitled her to damages for abuse of process and statutory and common-law vexatious litigation, but because the defendant could be compensated only once for the same injury, she was awarded emotional distress damages only once. See *Rowe* v. *Goulet*, 89 Conn. App. 836, 849, 875 A.2d 564 (2005) ("The rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury . . . . Duplicated recoveries, furthermore, must not be awarded for the same underlying loss under different legal theories. . . . Although a plaintiff is entitled to allege respective theories of liability in separate claims, he or she is not entitled to recover twice for harm growing out of the same transaction, occurrence or event." [Citations omitted; internal quotation marks omitted.]). Thus, the defendant could not be awarded $35,000 in emotional distress damages for abuse of process and also $105,000 in treble damages for statutory vexatious litigation, totaling $140,000, because this would amount to double recovery. By awarding the defendant only $105,001 in compensatory damages, the court properly limited the defendant to one instance of recovery for her emotional distress.

[3] In addition to these arguments, the plaintiff contends that court improperly awarded emotional distress damages for abuse of process because the defendant did not plead emotional distress damages in her counterclaim under count one for abuse of process. In count one of the amended counterclaim, the defendant alleged that she "suffered damages." Then, under her claim for relief, she requested "[c]ompensatory damages," which include emotional distress damages. See *Commission on Human Rights & Opportunities ex rel. Arnold* v. *Forvil*, 302 Conn. 263, 286, 25 A.3d 632 (2011) (compensatory damages may include award for emotional distress). Although the counterclaim could have alleged the nature of the relief sought more precisely, a party may plead adequately emotional distress damages as long as the pleading "fairly [apprises] the adverse party of the state of facts which it is intended to prove." Practice Book § 10-2; see *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 173–74, 530 A.2d 596 (1987). Additionally, at trial, the plaintiff did not object to the introduction of evidence concerning the defendant's mental and emotional distress caused by the plaintiff's filing of the malicious prosecution action. Moreover, the evidence presented at trial was sufficient to establish this claim. See *Buckman* v. *People Express, Inc.*, supra, 173–74. Under these circumstances and at this late date, the plaintiff is not entitled to attack the sufficiency of the counterclaim in this regard.

The plaintiff also argues that, as a matter of law, the trebling of the emotional distress damages was improper because claims for statutory vexatious litigation may not be asserted in the same action as claims for common-law vexatious litigation. See *Whipple* v. *Fuller*, 11 Conn. 582, 586 (1836) ("these counts [for common-law and statutory vexatious litigation] could not, by law, be joined in one declaration"). Although the applicability of *Whipple* is questionable, because that case involved a general verdict and was decided prior to the adoption of statutes governing the joinder of different causes of action, we need not reach this issue because the plaintiff waived his right to raise it. The plaintiff's argument challenges the legal sufficiency of the complaint, which is properly raised in a motion to strike. See Practice Book § 10-39 (a) (2). The plaintiff, however, did not file a motion to strike; rather, he filed an answer with a special defense to the amended counterclaim. Accordingly, he waived his right to raise this issue. See Practice Book §§ 10-6 and 10-7.

[4] We note that in his discussion on causation, the plaintiff sets forth one conclusory sentence that states: "[i]n the underlying proceeding, neither the testimony [of the defendant] nor any other evidentiary showing was made to establish the basis for [$35,000] for emotional distress." To the extent that the plaintiff's argument includes a challenge to the amount of the emotional distress damages as excessive or unsupported by the evidence, we determine that such a claim is inadequately briefed, and, thus, we decline to reach it. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014). Even if we were to reach this claim, we determine that there is sufficient evidence in the record from which the court could have found that $35,000 in noneconomic damages was fair, just, and reasonable for the defendant's insomnia and emotional upset.

[5] We note that although the court did not use the phrase "primary purpose," it did find that the plaintiff's purpose in bringing the action was to harass

and intimidate. Further, the court found that the plaintiff did not bring the action to obtain damages. By finding that the plaintiff did not bring the action for a proper purpose—to obtain damages—the court, in essence, found that his primary purpose for bringing the action was improper. Thus, we infer from the court's findings that it found that the plaintiff's "primary purpose" in bringing the action was to harass and intimidate.

[6] General Statutes § 52-216c provides in relevant part: "[C]ounsel for any party to the action shall be entitled to argue to the trier of fact during closing arguments . . . that [it] should draw an adverse inference from another party's failure to call a witness who has been proven to be available to testify."

[7] Not only does the plaintiff not challenge on appeal the adverse inference drawn against him by the trial court, but he also admitted at oral argument to this court that it was within the trial court's discretion to draw such an inference and that he was not challenging the trial court's exercise of discretion to do so.

Furthermore, because the plaintiff does not challenge the adverse inference drawn against him, we do not address whether the trial court properly applied § 52-216c in this case in which, although the plaintiff did not testify at trial, a portion of his deposition transcript was admitted into evidence as a full exhibit in lieu of his testimony.

[8] The concluding paragraph in the November 6, 2014 judgment states:
"Judgment enters for [the defendant] on her counterclaim as follows:

| "Count one: | Compensatory damages | $ 105,000 |
| "Count four: | Compensatory damages | $ 1 |
| | "Punitive damages | $ 20,000 |
| | "Total damages | $ 125,001" |

[9] We recognize that the defendant filed a motion for clarification and asked the court to clarify the form of the judgment to reflect that the trebling of the emotional distress damages was pursuant to § 52-568 (2) for statutory vexatious litigation. The court denied the motion without comment.

[10] To the extent that the concluding paragraph of the judgment, if viewed in isolation, contains an error, we hold that it is merely a clerical error, which the trial court may correct at any time. "Our Supreme Court has explained that [t]here is a distinction between corrections [of judgments] that change the substance of a court's disposition and corrections that merely remedy clerical errors. . . . [T]he distinction [is] that mere clerical errors may be corrected at any time even after the end of the term. . . . A clerical error does not challenge the court's ability to reach the conclusion that it did reach, but involves the failure to preserve or correctly represent in the record the actual decision of the court. . . . In other words, it is clerical error if the judgment as recorded fails to agree with the judgment in fact rendered . . . ." (Internal quotation marks omitted.) *Milazzo* v. *Schwartz*, 88 Conn. App. 592, 596, 871 A.2d 1040 (2005). In the present case, any error in the conclusion of the judgment is merely an imprecise representation of the court's actual decision. Such an error is a matter of form, not substance, and, thus, is a clerical error. See *Maguire* v. *Maguire*, 222 Conn. 32, 39–40, 608 A.2d 79 (1992).

[11] The plaintiff challenges only the court's finding that he did not provide Williams with a full and fair statement of the facts. The court's wording, however, could be interpreted to mean that it found that the plaintiff did not meet any of the elements of his special defense, which include good faith reliance on counsel's advice and a full and fair statement of the facts to counsel. See *Vandersluis* v. *Weil*, 176 Conn. 353, 361, 407 A.2d 982 (1978). Neither party has briefed whether the plaintiff actually relied on counsel's advice. Because we conclude that the court's finding that the plaintiff did not give counsel a fair and full statement of the facts within his knowledge was not clearly erroneous, we need not reach this issue.